WALTER S. BENTON

*v.*

J. A. FAY & Co.

DAMAGES—*measure of, for failure by the vendor to deliver articles purchased of him.* In a suit to recover damages for the non-delivery of a planing machine, it appeared the plaintiff, resident in Iowa, came to the defendant's warehouse in Chicago and bought the machine, which he selected with reference to its weight and finish. He paid $100 in hand, and was to pay $450 more on the delivery of the machine at his residence in Iowa. The contract was, that he was to have the identical machine he had selected, which he described in his evidence as the best he had ever seen. The defendant's agent, in charge of the warehouse, told him it had been made for exhibition at the fair, and had taken the premium. This was about February 14, 1871. The machine was to be shipped when ordered,

27—64TH ILL.

but defendant's agent desired to keep it in store as long as possible. The plaintiff returned home to put up his shafting and pulleys, with the understanding that he was to send for the machine as soon as he should be ready to put it up. He ordered it by letter on the 13th or 14th of March, and, after a delay of fifteen or sixteen days, received a letter from Cincinnati, saying that a machine had been shipped for him to Chicago. He declined to receive any machine except the one he had bought, and, on the 12th of April, came to Chicago and found that one in defendant's warehouse. He demanded it, but the agent of defendant refused to let him have it, and on the 12th of April he bought another machine. On the trial the plaintiff offered to prove that he had erected a building and put in a steam engine and shafting at an expense of $5000, with a view to the use of this machine; that the defendant had notice of this when the contract was made; that it all lay idle for thirty-five days, in consequence of defendant's breach of his contract: *Held,* that such evidence was admissible; that, in arriving at the damages which the plaintiff was entitled to recover, he should be allowed to show what would have been a fair rent for the use of the building and machinery, if in running order, during the time they lay idle in consequence of the defendant's refusal to deliver the machine, though he should not be allowed for any longer time than was reasonably necessary for supplying himself with another machine of similar character, after being advised of the defendant's refusal to send the machine purchased. Neither should he be allowed anything for probable profits.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Messrs. KNOWLTON, SMITH & SCALES, for the appellant.

Messrs. HITCHCOCK, DUPEE & EVARTS, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

The plaintiff, resident in Iowa, came to the defendant's warehouse, in Chicago, and bought a planing machine, which he selected with reference to its weight and finish. He paid $100 in hand, and was to pay $450 more on the delivery of the machine at his residence in Iowa. The contract was, that he was to have the identical machine he had selected, which he describes in his evidence as the best he had ever seen. The defendant's agent, in charge of the warehouse, told him

it had been made for exhibition at the fair, and had taken the premium. This was about February 14th, 1871. The machine was to be shipped when ordered, but defendant's agent desired to keep it in store as long as possible. Plaintiff returned home to put up his shafting and pulleys, with the understanding that he was to send for the machine as soon as he should be ready to put it up. He ordered it by letter on the 13th or 14th of March, and, after a delay of fifteen or sixteen days, received a letter from Cincinnati saying that a machine had been shipped for plaintiff to Chicago. Plaintiff declined to receive any machine except the one he had bought, and, on the 12th of April, came to Chicago and found that one in defendant's warehouse. He demanded it, but the agent of defendant refused to let him have it, and, on the 24th of April, he bought another machine. He had been delayed in his business about five weeks. This suit was brought to recover damages for non-delivery of the machine.

There is no dispute about these facts, and the only question is as to the measure of damages.

The court instructed that the damages would be the difference between the contract price and the market value of the article at the time and place when and where the same was to be delivered. The jury found for the plaintiff $175.

The rule given by the court is the correct rule in actions for the non-delivery of ordinary merchandise which can be at once replaced in the market, but it is not applicable to a case like the one at bar, where a specific article is bought for a specific purpose, known to the vendor at the time of sale, and he wilfully refuses to deliver. In such cases the ordinary rule of damages above announced would furnish a very inadequate compensation for the damages actually suffered. In the present case another planing machine might have been ordered from Chicago, but the plaintiff had contracted for this particular machine, and had arranged his other machinery with a view to its use. He had a right to rely upon its being sent to him on his order, and it was simple effrontery on the part

of the defendants to offer to send him another machine that he had never seen, and which might not suit him, and deliberately retain in Chicago the machine which he had bought and for which he had partly paid.

In such a case, what is the measure of damages? *Hadley* v. *Baxendale,* decided in the court of Exchequer, and reported in 26 E. L. & Eq. 398, is a leading case on this question. There, the plaintiffs, owners of a steam grist-mill, had contracted with the defendant, a common carrier, to transport two pieces of iron, being the broken shaft of a mill, and deliver them to an artificer to serve as a model in making a new shaft. There was an unreasonable delay in the delivery, in consequence of which the plaintiffs' mill was idle for a considerable period. The defendant was not aware for what purpose the broken shaft was sent. The court said, " We think the proper rule in such a case as the present is this : Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be either such as may fairly and reasonably be considered as arising naturally, that is, according to the usual course of things, from such breach of the contract itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." The court then concede that, if the carrier had known the purpose for which the shaft had been delivered to him, the damages arising from the enforced idleness of the mill in consequence of the non-delivery of the broken shaft in a reasonable time, would have been in the contemplation of both parties, and the plaintiff would be entitled to recover such damages ; but as the facts were not communicated to the carrier, these damages could not be recovered.

In *Griffin* v. *Colver,* 16 N. Y. 489, the rule is laid down by Selden, J., delivering the opinion of the court, in substantially the same language, with the addition, " that the damages must be certain, both in their nature and in respect to the cause

from which they proceed." In that case the defendants had contracted to construct for the plaintiff a steam engine, and deliver it by a certain day. They failed to deliver within the time, whereby the plaintiff's machinery for sawing and planing lumber was kept idle. The defendant knew for what purpose the engine was designed. The court held the proper rule for estimating the damages was, to ascertain what would have been a fair price to pay for the use, during the time, of the engine and machinery, in view of the hazards and chances of the business.

We need not, however, go beyond our own reports. In *Green* v. *Mann*, 11 Ill. 614, the defendant, who had leased a grist-mill to the plaintiff, failed to properly put in operation two additional runs of stone, as he had agreed to. The court held the measure of damages to be the value of the use of the runs of stone not furnished.

In *Priestly* v. *N. I. & C. R. R. Co.* 26 Ill. 207, which was an action against a railway company for non-delivery of certain machinery, the circuit court adopted the same rule of damages as that adopted by the court below in the present case. This court admitted the rule to be applicable to ordinary merchandise, but denied its applicability to the case at bar, and held the defendant liable for the value of the use of the machinery. The court held the inquiry should be: For what sum could plaintiff have hired equal machinery of that description? In that case the court said the plaintiffs had not notified the defendants for what purpose they designed the machinery, but if they had done so, they might have claimed additional damages arising from the interruption of business.

In *Strawn* v. *Coggswell*, 28 Ill. 461, the complainant was seeking to enforce a mechanic's lien for work done on a mill and its machinery. The defendant sought to recoup damages on the ground that the work was improperly done. The court held the measure of damages to be "the difference in value between the work as performed, and such as the contract required, together with the necessary loss of its use while the change is being made."

It is claimed by defendant's counsel that none of these cases decided by this court related to contracts of sale. That is true, but we can perceive no difference in principle between the sale of a specific article for a specific purpose, and a contract to construct or to carry such an article for a specific purpose, so far as relates to the rule of damages to be applied in the respective cases.

In this case the plaintiff offered to prove that he had erected a building, and put in a steam engine and shafting, at an expense of $5000, with a view to the use of this machine; that the defendant had notice of this when the contract was made, and that it all lay idle for thirty-five days in consequence of defendant's breach of his contract. This evidence was rejected. It should have been admitted, and the plaintiff should have been allowed to show what would have been a fair rent for the use of the building and machinery, if in running order, during the time they lay idle in consequence of the plaintiff's refusal to deliver the machine. The plaintiff is not to be allowed, however, for any longer time than was reasonably necessary for supplying himself with another machine of similar character, after being advised of the defendant's refusal to send the machine purchased. Another trial may disclose additional elements of damage, but we will only remark now that no evidence should be received as to probable profits, as they would be purely speculative. This is unlike the case of *Chapman* v. *Kirby*, 49 Ill. 211, where an established business was destroyed by the wrongful act of the defendant, and the plaintiff was allowed to prove an average line of profits on the business he was doing. It is more like the case of *Green* v. *Williams*, 45 Ill. 208, in which speculative profits were held not recoverable, but the plaintiff was permitted to recover, in a certain contingency, interest on the amount of capital invested in her business during the necessary suspension of such business.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*