# THE WESTERN UNION TELEGRAPH COMPANY
## v.
## THOMAS J. MARTIN, JR.

TELEGRAPH MESSAGE—FAILURE TO DELIVER PROPERLY—RULE OF DAMAGES.—In order to make a telegraph company liable for ulterior and remote consequences for a failure to properly transmit a message, the in-

portance of which from the face of the message it could not be advised, it is the duty of the sender to disclose to the company the purport and meaning of the communication. So, where a cipher message is sent, of the import of which the company is not advised, only nominal damages, or the cost of the message, can be recovered.

Appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding. Opinion filed January 4, 1882.

This is an appeal by the Western Union Telegraph Company, from a judgment rendered against it by the Superior Court, for failing to transmit correctly, a message in the following words:

"To F. M. Gunby, Charleston S. C.

Excited, Elaborate, Lordship Educate punctual Arab boxes Lordship side pieces Lunar sixteen Cherub a bargain see Williams timid.

Thomas J. Martin, Jr."

The message, translated, means:

"Market excited, dry salt clear ribs packed seven and one-eighth, rejected dry salt clear ribs packed, six and one quarter; think can buy one hundred boxes rejected side pieces, average weight sixteen pounds, at five and three-eights. A bargain. See Williams. Answer immediately."

The message was sent as written, except the word *sixteen* which was transmitted as *sixty*, August 13, 1878. On the same day, appellee received a reply from Grunby, directing him to buy 100 boxes, which appellant did, shipping by Grunby's direction, 40 boxes to one Bischoff, and 60 boxes to Wieters, customers of Grunby's in Charleston; and appellee drew his drafts on them for their respective amounts. Wieters paid the draft on him. Bischoff, on learning that the meat was sixteen pounds instead of sixty, refused to receive it, and let the draft on him go to protest. Grunby, claiming to be unable to place the meat elsewhere, appellee sent an agent to Charleston, who disposed of it at a loss of $297. The expenses of the agent were $125. Appellee notified the company of his loss, and demanded re-imbursement, which being refused,

he brought this suit, and recovered a verdict for $422, for which he had judgment, and the company appealed.

The defendant requested the court to instruct the jury as follows:

I.  "That the message in which the error occurred is in cipher, and unintelligible, and does not disclose the nature of the business to which it relates, and in such case, unless the nature of the matter to which it related was disclosed to the defendant, of which there is no evidence, the measure of damages is the amount, if any, paid for the transmission, with interest thereon from the time of payment at the rate of six per cent. per annum.

II.  " That if the jury believe from the evidence that the message in question was in cipher and unintelligible to defendant, and that defendant had no knowledge except what was conveyed by the language of the message itself of the meaning of the message, or of the character or extent of the business to which it related, or of its importance, or of the probable or possible consequences of a failure to transmit it correctly, then the plaintiff can recover in this action no more than the amount, if any, paid by plaintiff to defendant for transmitting the message, with interest thereon.

III.  " That if the jury believe from the evidence that the plaintiff did not, within sixty days after the sending of the message in question, present to defendant a claim in writing, showing the character and extent of the actual loss, or, with such exactness as was then practicable, the character and extent of the apprehended loss by reason of the error, plaintiff cannot recover.

IV.  " That it became the duty of plaintiff, on learning that an error had occurred, if he intended to hold defendant responsible for the loss which might occur, to notify defendant of such intention, and make tender to the defendant of the goods on condition of its paying the price and all charges incident to the purchase, and that in case of the refusal of defendant to accept such tender, he intended to dispose of the goods to the best advantage, and after crediting defendant with any profits arising on the transaction, to hold defendant responsible for

the difference between the proceeds of such disposition and the cost of the goods, including all proper charges, and on the failure of defendant, after notice, to accede to such offer, to proceed accordingly; and if plaintiff did not perform his duty as above indicated, the jury must find for defendant."

Which instructions the court refused to give, and the defendant excepted.

At the instance of plaintiff the court gave to the jury an instruction reciting at length the circumstances of the transaction, as testified to by witnesses for plaintiff, and directing the jury, if they should believe from the evidence, that the facts were as therein recited, to find for the plaintiff, and assess his damages at the amount necessarily lost in the sale and disposition of said meat, together with the amount necessarily expended in such disposition.

Messrs. WILLIAMS & THOMPSON, for appellant; that in such cases the damages recovered cannot be more than the amount paid for the transmission of the message, cited Hadley v. Baxendale, 9 Exch. 341; Griffin v. Colver, 16 N. Y. 489; Benton v. Fay, 64 Ill. 417; Sanders v. Stuart, L. Rep. 1; Candee v. W. U. Tel. Co. 34 Wis. 471; Tyler v. W. U. Tel. Co. 60 Ill. 421; W. U. Tel. Co. v. Tyler, 74 Ill. 168; Shields v. Wash. Tel. Co. Allen's Tel. Cases, 5; Kinghorne v. Montreal Tel. Co. 18 U. C. Q. B. 60; Baldwin v. U. S. Tel. Co. 45 N. Y. 744; McCall v. W. U. Tel. Co. 7 Abb. (N. C.) 151; Beaupre v. P. & A. Tel. Co. 21 Minn. 155; U. S. Tel. Co. v. Gildersleeve, 29 Md. 232; Barnesville Bank v. W. U. Tel. Co. 30 Ohio St. 555; Behm v. W. U. Tel. Co. 11 Chicago Legal News, 276; Dorgan v. Tel. Co. 1 Am. L. T. 407; Hord v. W. U. Tel. Co. 3 Cin. Law Bulletin, 147; Lane v. Montreal Tel. Co. 7 U. C. C. P. 23; Stevenson v. Montreal Tel. Co. 16 U. C. Q. B. 530.

Plaintiff cannot recover because he failed to present a claim in writing within sixty days, as required by the regulations of the company: Oppenheimer v. U. S. Ex. Co. 69 Ill. 62.

Such a regulation is reasonable, and has been expressly upheld: Southern Ex. Co. v. Caldwell, 21 Wall. 264; Weir v. Ex. Co. 5 Phila. 355; U. S. Ex. Co. v. Harris, 51 Ind. 127; Lewis

v. Great W. R'y Co. 5 H. & N. 867; Wolf v. W. U. Tel. Co. 62 Pa. St. 83; Young v. W. U. Tel. Co. 4 N. Y. 390; Aiken v. W. U. Tel. Co. 5 Rich. 358.

Mr. Charles B. McCoy, for appellee; cited Tyler v. W. U. Tel. Co. 60 Ill. 421; W. U. Tel. Co. v. Tyler, 74 Ill. 168.

Wilson, P. J. The principal question for determination is as to the measure of damages against a telegraph company for failing to transmit correctly a message in cipher, the same not being translated, nor its meaning otherwise disclosed to the company at or before the time of its being sent. The true rule of damages for the breach of a contract is not always easy of ascertainment, especially as respects that class of damages denominated special or consequential, each case necessarily depending upon its own circumstances. In general, it may be said that a party in default is required to make good the damages sustained by his breach of contract which were contemplated by, or may be reasonably supposed to have entered into the contemplation of the parties when making the contract. 1 Sedg. on Dam. 122.

In Hadley v. Baxendale, 9 Exch. 341, Baron Alderson states the rule as follows : " Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of a breach of contract should be such as may fairly and reasonably, be considered either arising naturally, i. e., according to the usual course of things, from such contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as a probable result of the breach of it."

The general rule as thus stated has, we believe, been everywhere recognized and acted upon by the courts of this country. In New York the rule is laid down in substantially the same language. Mr. Justice Selden, in Griffin v. Colver, 16th N. Y. 489, said " The party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions; the damages must be such as may be fairly supposed to have entered into

the contemplation of the parties when they made the contract—that is, they must be such as might naturally be expected to follow its violation; and they must be certain both in their nature and in respect to the cause from which they proceed."

Our own Supreme Court, in Benton v. Fay, 64 Ill. 417, and in numerous other cases, have announced substantially the same rule. Greene v. Mann, 11 Ill. 644; Priestly v. N. I. & C. R. R. Co. 207; Strawn v. Coggswell, 28 Ill. 461. See, also, Goodkind v. Rogan, 8 Bradwell, 415.

It would seem to follow, as a corollary to the above, that to make a party to a contract responsible, in case of its non-fulfillment by him, for ulterior consequences, involving the payment of damages which do not flow directly and naturally its breach, he should be informed with reasonable pre-ᵒf the purpose for which the subject of the contract is ᵗhe other party. That purpose should be brought faᵢ. ᵒontemplation of the one who is to be charged. Sedg. ᵥ ᵈd. 83.

Applyiᵤₛ ᵗles to the cᵢ nessage delivered to a telegraph ᵥ ᵉᵐs cle n order to charge the company for nᵢ ᵐotᵉ ᵢences, of which, from the face of the mᵥ advised, it is the duty of the sender to disᵢᵥ the purport and meaning of the communicatᵢᵥ ₒr transmission. And such we understand to be tᵤ ᵗrine both in England and this country.

In Sanders v. Stuart, 1 L. R. Com ne plain-tiff delivered to the defendant a cip ᵤ be trans-mitted to America, but which, throuₓ efendant's negli-gence was not forwarded. The plaint ht to recover for profits, which it was admitted they ᵥ ive made if the message had been duly sent. Lord ᵉe, in delivering the opinion of the court, said: "Upᵢ ᵢcts of this case we think the rule in Hadley v. Baxᵉ pplies; and the damages recoverable are nominal onl̞ ᵢ not necessary to decide, and we do not give any opin the case might be if the message instead of being in lᵢ utterly unintel-ligible, had been in plain and intelligi s. It was con-

veyed in terms, which, so far as the defendant was concerned, were simple nonsense. For this reason, the second part of Mr. Baron Alderson's rule clearly applies. No such damages as above mentioned, could be reasonably supposed to have been in the contemplation of both parties, at the time they made the contract as a probable result of the breach of it, for the simple reason that the defendant did not know what the contract was about, nor what, nor whether any damage would follow from the breach of it. And for the same reason, viz, the total ignorance of the defendant as to the subject-matter of the contract (an ignorance known to, and indeed intentionally procured by the plaintiff), the first portion of the rule applies also, for there are no damages more than nominal which can be fairly and reasonably considered as arising naturally, and according to the usual course of things, from the breach of such a contract as this."

This subject was fully considered by the Supreme Court of Wisconsin, in Candee v. The Western Union Telegraph Company, 34 Wis. 471. That was an action against the company for damages alleged to have been sustained by the plaintiff through the failure of the defendant to deliver a cipher message, the meaning of which was unknown to the company. The plaintiff was a banker and broker, doing business in Milwaukee, and engaged in buying and selling by telegraph in the New York Stock Exchange, gold, Government bonds and railway shares, through his brokers and agents in New York, in which business he had been engaged many years prior to the date of the message in question, sending and receiving daily messages in cipher. The message on which the suit was based was as follows, after the direction: "*Arch Barlier, Henry Augusta,*" which, translated, meant, "Buy for my account, and answer by telegraph, 250 shares Chicago and Northwestern common stock." Non-delivery of the message being admitted, the plaintiff recovered in the court below the difference between the price at which the stock could have been bought, had the message been duly delivered, and the price at which it was bought on the discovery of the failure to deliver.

In delivering the opinion of the Supreme Court reversing the judgment, Chief Justice Dixon said:

"There appears to be no division of opinion among the courts that in contracts of this class the measure of damages to be recovered is the same as that which obtains in actions upon contracts in general, the rule for the assessment of which has ever been correctly expressed in the leading case of Hadley v. Baxendale. It cannot be assumed that any amount of damages or any pecuniary loss or injury will naturally ensue or be suffered, according to the usual course of things, from the failure to transmit a message, the meaning and import of which are wholly unknown to the operator. Ignorant of its real nature and importance, it cannot be said to have been in his contemplation at the time of making the contract, that any particular damage would be the probable result of a breach of the contract on his part. * * * These facts, however much they may tend to show negligence in the operator, fail to bring the case within the rule for the assessment of damages above stated. The operator cannot be said to have contemplated a rise in the value of stocks by which the plaintiff became a loser, as a probable result, or one of the probable results, of his failure to transmit the message."

Similar views have been expressed in many other cases, to which we might refer. Thus, in Shields v. Washington Telegraph Co. 9 West Law Journal, March, 1852, the message was in these words, "oats fifty-six, bran one-ten, corn seventy-three, hay twenty-five," was incorrectly transmitted, so that when delivered "sixty-six" was substituted for "fifty-six." No explanation of the meaning of the telegram was made to the company. It was held that the measure of damages was the price paid for transmitting the telegram.

The court said, "How could the operator know whether the dispatch contained an order to purchase, or an account of sales? And if he were bound to infer the former, what information did the dispatch convey to his mind of the extent of the order? Under these circumstances the value of the message transmitted was inappreciable, and the telegraph company had no means of knowing the extent of the responsibility which ought to be involved in its transmission."

In Kinghorne v. Montreal Tel. Co. 18 Upper Can. Q. B. 60, the dispatch was, "Do accept your offer. Ship tomorrow ten or twenty hundred." The court said "what would the message have informed the man at Ogdensburg, whose duty it was to take it from the wire, and send it by another man to the American Company? Nothing but that A had accepted an offer—he could not tell for what—and would ship 1,000 or 2,000, whether of staves or shingles or barrels of flour, he could not tell."

In Baldwin v. U. S. Tel. Co. 45 N. Y. 744, the court said: "For all purposes for which the plaintiffs desired the information, the message might as well have been in a cipher, or in an unknown tongue. * * * Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been that the contracts have been made with reference to peculiar circumstances known to both, and the peculiar loss has been in the contemplation of both at the time of making the contract, as a contingency that might follow the non-performance."

And so in Beaupre v. P. and A. Tel. Co. 21 Minn. 155, the message was "Dispatch received. Will take two hundred extra mess, price named." The court held, that while the company might have known from the tenor of the message, that it related to a purchase of goods, it gave no information as to the magnitude or importance of the business involved, or of the amount of damage that might result from a delay in transmitting it.

Analogous cases might be multiplied indefinitely, but it is quite unnecessary. We have cited some of the foregoing to show the rulings of the courts in respect to messages apparently much more intelligable than the one now before us. It would require a very acute mind to discern the meaning or import of a group of words consisting, as in the present case, of " excited elaborate lordship educate punctual Arab boxes lordship side pieces lunar sixteen cherub a bargain see Williams timid." Indeed it would be difficult to devise a mes-

sage better calculated to conceal its meaning. The word *sixteen*, incorrectly transmitted as "sixty," was, it is true, a simple numeral, and standing by itself, easily understood, but in its connection was as unintelligable as the word "Arab."

The very object of appellee in resorting to cipher was to conceal his meaning from everybody except the person to whom the message was sent. Even if enough appeared on the face of the message to indicate that it related to side-pieces of pork, there was nothing to show the nature, meaning, or extent of what was sought to be communicated. As to the company, it was as a sealed book.

The case of the U. S. Tel. Comp'y v. Wenger, 55 Penn. 262, is not in conflict with any of the cases above cited. There the message was not in cipher. It read: "To Mr. J. O'Brien, 58 Wall St., New York. Buy (50) North Western, Fifty Prairie du Chien; limit forty-five." The plaintiff was allowed to recover, the court placing its decision upon the ground that under the circumstances the dispatch was sufficient to disclose the nature of the business to which it related, and that the parties might well suppose that loss would be likely to result if there was a lack of promptitude in transmitting the message.

Of the case of Tyler, Ullmann & Co. v. Western Union Tel. Co. 60 Ill. 421, which it is urged by appellee's counsel is in conflict with the rule of damages above indicated, it may be observed, first, that the principal contention there was, not as to the measure of damages, but as to the question of liability, namely, whether the printed conditions in the heading of message blanks constitute a contract between the sender and the company by which the latter is relieved from the consequences of its own negligence. Mr. Justice Breese discusses that question in a very lengthy opinion, reaching the conclusion that such conditions do not shield the company against *liability*. The question as to the rule of damages was very little considered and briefly disposed of, the learned judge referring to but a single authority—The U. S. Tel. Co. v. Wenger, *supra*— which, as we have seen, is not in conflict with the cases heretofore cited. But, secondly, a careful reading of the language used by Justice Breese will show that the plaintiff's right to

W. U. Tel. Co. v. Martin.

recover the damages claimed was put upon the ground that the message disclosed the nature of the business to which it related. The message was: "Sell one hundred (100) Western Union. Answer price." He says: "The best reflection we have been able to bestow on this branch of the case, prompts us to say the rule adopted in U. S. Telegraph Co. v. Wenger, in a similar case, is a reasonable rule. That message, as this, *disclosed to the agent of the telegraph company the nature of the business to which it related;* in this case to sell a number of shares of stock." It will thus be seen that the court did not undertake to lay down a rule as to the measure of damages where the message does not disclose its nature or contents; and the decision may therefore be regarded as in substantial harmony, rather than in conflict, with the cases hereinbefore cited.

As the message in the present case was meaningless, to the company's operator, and furnished no information as to the nature and extent of the business to which it related, whether it was an order to buy or sell pork, or any other commodity, whether it contained advices as to the state of the market, or whatever else its real import was, it would be absurd to claim that the company either had in contemplation, or can reasonably be supposed to have had in contemplation, at the time of transmitting it, damages for a loss on the sale of pork, or expenses incurred in respect thereof.

In allowing the plaintiff to recover for such damages, the court below erred. Under the case, as made by the proofs, the recovery should have been confined to the amount paid to the company, with interest for sending the message.

The judgment must be reversed and the cause remanded.

Reversed and remanded.