## WESTERN UNION TELEGRAPH CO.

v.

## HARRIS & COMSTOCK.

1. TELEGRAPH COMPANIES—LIABILITY.—Regulations exempting telegraph companies from liability for errors in unrepeated messages, exempt them only from errors arising from causes beyond their own control. Notwithstanding special conditions in a contract, such companies are bound to use at least ordinary care and diligence in their business, and are responsible for mistakes happening by their own fault.

2. NIGHT MESSAGES—DAMAGES LIMITED TO TEN TIMES CHARGES PAID — A telegraph company is bound to use ordinary care and diligence as well in the transmission and delivery of a night message as of a day message, and the same rule as above applies where the damages in a night message w re limited to ten times the charges paid for sending. *Held*, that such limita_ tion was unreasonable.

3. MISTAKE IN MESSAGE.—A mistake in the transmission of a message is *prima facie* evidence of negligence, and the burden of proof is shifted to the company to show the contrary.

4. SAME.—Where the message as delivered by the commission merchants to the telegraph company, was: " Ten cars new two whites Aug. shipment fifty-six half—Prompt reply," and the company delivered the message leaving out the six after fifty. *Held*, that the message was sufficient to give the company notice of its importance, and disclosed the nature of the business as fully as the case demanded.

5. DAMAGES.—The receiver of the message ordered the grain by telegraph, and the error in the message did not appear until the grain had been shipped. The receiver paid the draft drawn on him by the sender of the message upon condition that the sender would repay to him the difference in price, six cents a bushel. Suit is now brought against the company for the damages, six cents a bushel. The evidence shows that the sender bought the oats on the market at an average price of forty-five cents a bushel, and the freight was ten and one half cents a bushel. *Held*, that the verdict of the jury awarding five cents a bushel as damages was correct.

ERROR to the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed December 29, 1885.

Appellees were grain and commission merchants at Peoria, and on August 10, 1882, delivered to appellants, to be sent to the Paris Flouring Company, Portland, Maine, the following message:

" Ten cars new two whites Aug. shipment fifty-six half. Prompt reply."

When delivered at Portland to the Paris Flouring Co. the dispatch read as follows:

"Ten cars new two whites Aug. shipment fifty half. Prompt reply."

The message as sent was an offer by appellees to sell to Paris Flouring Co., delivered at Portland, ten cars of new No. 2 white oats, to be shipped in August, at fifty-six and one half cents per bushel; and as delivered it was an offer to sell the same at fifty and one half cents per bushel, the word "six" having been omitted from the dispatch in its transmission. The Flouring Company telegraphed in reply:

"Accepted; ship Boston via Portland. Start few cars early as possible."

It appears that the freight rate to Portland was the same as to Boston. The oats to fill the supposed contract were purchased by appellees and sent forward, and the error was not discovered until after they had all been shipped from Peoria.

Upon discovering a mistake had been made, the Paris Flouring Co. telegraphed to appellees offering to cancel the contract, and this offer was declined. Appellees had, at date of shipment, drawn on the Flouring Co. for the price of the oats at fifty-six and a half cents per bushel, and were notified that the draft would not be paid unless they would agree to accept a draft of the Flouring Co. upon them for the difference in price, six cents per bushel; this appellees agreed to do and did so, repaying to the company $551.25. Verbal notice was immediately given to appellants, and on the 6th of September following appellees presented to them a written claim for damages, at six cents per bushel.

The evidence shows that the oats shipped amounted to nine thousand one hundred and eighty-seven and a half bushels, and that they were bought by appellees on the Peoria market for the purpose of filling the supposed contract, at a cost of from forty-three and one half to forty-eight cents per bushel, and at an average price of a fraction over forty-five cents per bushel; and that at that time the freight to Portland or Boston was thirty-two and a half cents per hundred, or within a

very small fraction of ten and a half cents per bushel. It also appears that at the time of the arrival of the oats in Portland the market price there was from forty-eight to fifty cents, with a dull market.

The evidence further shows, that the message of the tenth of August, from which the word "six" was dropped in transmission, was what is known as a night message, and that the charge made for sending and delivering it was fifty-six cents, that being one half of the usual rates charged for day messages. The blanks furnished by the telegraph company for night dispatches, and upon one of which the telegram in question was written by appellees, provided, among other things, that the company would receive messages to be sent without repetition during the night at one half the usual day rates, but upon the express condition that the sender will agree that he will not claim damages for errors or delays, or for non-delivery of such messages, happening from any cause, beyond a sum equal to ten times the amount paid for transmission.

This action was brought by appellees against appellants to recover damages alleged to have been caused by the negligence and mistake of appellants in transmitting the dispatch of the tenth of August. The verdict of the jury and judgment of the circuit court were for appellees, for $459.38 damages.

Messrs. STEVENS, LEE & HORTON, for appellant; that the damages must not be the remote but proximate consequence of the breach of the contract and must not be speculative or contingent, cited Beaupre v. P. & A. Tel. Co., 21 Minn. 158; First Nat, Bk. v. Tel. Co., 30 Ohio, 565; Baldwin v. U. S. Tel. Co., 45 N. Y. 753.

Plaintiffs can not recover more than the price of the message, unless it is shown that the offer correctly sent would have been accepted: Beaupre v. P. & A. Tel. Co., 21 Minn. 158.

Before defendant can be held liable it must appear that it had knowledge of the meaning of the message: Beaupre v. P. & A. Tel. Co., 21 Minn. 161; Baldwin v. U. S. Tel. Co., 45 N. Y. 749; W. U. Tel. Co. v. Martin, 9 Bradwell, 587; Landsberger v. Magnetic Tel. Co., 32 Barb. 530; U. S. Tel. Co. v. Gildersleeve, 29 Md. 232.

The condition as to the repetition of a message and insurance is reasonable and valid, unless mistake happen through gross negligence, and will excuse the company: Passmore v. W. U. Tel. Co., 78 Pa. St. 238; West Un. Tel. Co. v. Neill, 57 Tex. 291; Ellis v. American Tel. Co., 13 Allen, 233; Camp v. W. U. Tel. Co., 1 Metc. (Ky.) 164; Sweatland v. Ill. & Miss. Tel. Co., 27 Ia. 446; McAndrew v. Electric Tel. Co., 17 C. B. 3; West Un. Tel. Co. v. Carew, 15 Mich. 525; Breese v. Tel. Co., 48 N. Y. 138; Grinnell v. W. U. Tel. Co., 113 Mass. 302; Aiken v. Tel. Co., 5 S. C. 358; Becker v. Telegraph Co., 11 Neb. 87; Wann v. Telegraph Co., 37 Mo. 472.

Telegraph companies are not strictly common carriers, and should not be held to the same degree of strict responsibility: W. U. Tel. Co. v. Neill, 57 Tex. 283; Ellis v. Am. Tel. Co., 13 Allen, 232; Birney v. N. Y. & Wash. Tel. Co., 18 Md. 358; Breese v. Tel. Co., 45 Barbour, 292; W. U. Tel. Co. v. Carew, 15 Mich. 532; Breese v. Tel. Co., 48 N. Y. 132; Grinnell v. W. U. Tel. Co., 113 Mass. 305; Wann v. Tel. Co., 37 Mo. 472.

Parties sending night messages may agree, in consideration of the reduced rate, upon a sum certain in the nature of liquidated damages, for an error or delay arising from other cause than misconduct, fraud, or want of due care: W. U. Tel. Co. v. Neill, 57 Tex. 283; Ellis v. Am. Tel. Co., 13 Allen, 238; Elkins v. Trans. Co., 81 Pa. St. 315; Cam. v. W. U. Tel. Co., 1 Metc. (Ky.) 164–167; Breese v. U. S. Tel. Co., 45 Barb. 274; Breese v. Tel. Co., 48 N. Y. 138; Redpath v. Tel. Co., 112 Mass. 71; Aiken v. Tel. Co., 5 S. C. 358; Becker v. Tel. Co., 11 Neb. 87; Wann v. Tel. Co., 37 Mo. 472.

Messrs. CRATTY BROS., Messrs. FULLER & GALLUP and Mr. MILES A. FULLER, for appellees; as to liability of telegraph companies, cited Tyler v. W. U. Tel. Co., 60 Ill. 421; Sweatland v. Miss. Tel. Co., 27 Ia. 433.

As to liability on night messages: True v. International Tel. Co., 60 Me. 9; Candee v. W. U. Tel. Co., 44 Wis. 471; Hubbard v. W. U. Tel. Co., 33 Wis. 558; Bartlett v. W. U. Tel. Co., 62 Me. 209.

The message was sufficient to give notice to the company of its importance: In re W. U. Tel. Co., 68 Ga. 289 ; Tyler v. W. U. Tel. Co., 60 Ill. 421; Hubbard v. W. U. Tel. Co., 33 Wis. 558.

As to damages: Turner v. Hawkeye Tel. Co., 41 Ia. 458 ; 2 Sutherland on Damages, 422.

BAKER, J. In Tyler, Ullman & Co. v. W. U. Tel. Co., 60 Ill. 421, and W. U. Tel. Co. v. Tyler et al., 74 Id. 168, it was held that regulations exempting telegraph companies from liability for errors in unrepeated messages, exempt them only from errors arising from causes beyond their own control ; and that notwithstanding special conditions in a contract, such companies are bound to use at least ordinary care and diligence in their business and are responsible for mistakes happening by their own fault, such as defective instruments, carelessness or unskillfulness of their operators. In the Tyler case the question before the court had reference to an unrepeated message, whereas the matter now under consideration is in respect to a night message ; but as a telegraph company is bound to use ordinary care and diligence as well in the transmission and delivery of a night message, as of a day message, the same rule would apply. In True v. Int Tel. Co., 60 Maine, 8, the dispatch was a night message, and was written on a night message blank that contained a provision much like that here involved, and it was held that the terms of the conditions were not reasonable and did not exonerate the company from liability for damages occasioned by their default. A similar stipulation with reference to a night dispatch was in Hibbard v. W. U. Tel. Co., 33 Wis. 558, held to be unreasonable and void, and against sound public policy, inasmuch as it undertook to protect the company against the consequences of the negligence or fraud of its own agents. The same doctrine with reference to a night telegram is announced in Candee v. W. U. Tel. Co., 34 Wis. 471. In Bartlett v. W. U. Tel. Co., 62 Maine, 209, which was an action to recover damages for a mistake in the transmission of a night dispatch, it was decided that a condition of the kind under consideration was

against public policy, and therefore void even when assented to by the sender. These two latter cases are expressly referred to and approved by our Supreme Court in W. U. Tel. Co. v. Tyler, *supra*. The only circumstance of difference between the present case and those we have cited, is that here the damages are limited to ten times the charges paid for sending, instead of the exact amount so expended. The rule or contract, whichever it may be, claimed to be now in question, covers all errors or delays from any cause, and it must be regarded, so far as it proposes to relieve the corporation from responsibility for the negligence or misconduct of its own employes, as unreasonable an l unjust, alike hurtful to private rights and against public policy, and consequently void. The provision to pay a sum as damages, that shall in no event exceed ten times the trifling amount received as compensation for sending, is a mere shift or device to evade legal liability.

It is the established law in this State that a mistake in the transmission of a message is *prima facie* evidence of negligence, and the burden of proof is shifted to the company to show the contrary. There is, however, in the record, affirmative proof, other than the fact of the error, to establish the negligence of appellants. It appears that when the telegram reached Portland and was delivered, it was marked "12 pd. 56," and this is shown by the testimony to mean that the message sent contained twelve words and that fifty-six cents had been paid for its transmission. It must be regarded as evidence of gross negligence to deliver a message purporting to contain twelve words and actually consisting of but eleven, without inquiry as to the lost word.

It is urged that before the company can be held liable for more than nominal damages it must appear that they had knowledge of the meaning and purport of the message, at least to the extent that they could judge of the nature, character and amount of damages that might be sustained through a failure to correctly transmit. The evidence shows that it was an ordinary commercial dispatch, intelligible to those engaged in the grain business, and no doubt understood by the opera-

tors having charge of that character of telegrams sent from the office of appellants in the Board of Trade building. It was at least evident it was a commercial message of importance; and it disclosed the nature of the business as fully as the case demanded. Tyler, Ullman & Co. v. W. U. Tel. Co., *ante.*

A principal point in this litigation is with reference to the proper rule for the assessment of damages, as applicable to the facts of the case. We have already seen that the damages should not be restricted to the maximum recovery as fixed by the terms of the supposed rule or contract printed upon the blanks used for writing night messages. It is claimed by appellees that they were entitled to recover $551.25, that being six cents per bushel on 9,187½ bushels of oats shipped, and being the difference between the price at which they supposed the oats were sold and that at which they actually were sold, and being also the amount they were obliged to pay to the Paris Flouring Company. We are unable to indorse this view of the matter; the evidence shows that if the telegram of August tenth had been transmitted and delivered as it was written, the offer to sell would have been declined; and if damage was allowed upon the basis suggested, appellees would recover a profit they would not and could not have realized if there had been no default on the part of the appellants. Turner v. Hawkeye Tel. Co., 41 Iowa, 458, cited by appellees, we do not consider an authority in point. There Turner had a contract for the delivery of August wheat in Chicago at $1.32 a bushel, and on the faith of the dispatch in which the mistake was made, ordered his commission merchant there to purchase wheat to fill the contract, which was done. The price reported by the telegraph company was $1.21½ per bushel, and the price paid was $1.50 per bushel, a difference of twenty-eight and one half cents per bushel, and the court sustained a recovery on the basis of this difference. But the evidence in this case showed that Turner could have purchased wheat on the market at even $1.12 per bushel within five days and within the time prescribed by his contract for the delivery of the wheat he had sold. In that case the contract that was recognized as the basis of recovery could readily have been made,

while here the contract that we are asked to adopt as the basis of assessment could not have been made.

Appellees, supposing they had a contract at $56\frac{1}{2}$ cents per bushel, bought on the market in Peoria oats to fill it at an average price of 45 cents per bushel, and the freight was $10\frac{1}{2}$ cents a bushel; making the cost of the oats delivered in Portland, the sum of $55\frac{1}{2}$ cents per bushel. The party who sends a message by telegraph makes the telegraph company his agent for its transmission and delivery, and is bound by the message as delivered; and when the legal rights of the receiver, founded upon such message, are in question, he is entitled to put in evidence the message actually received, as the original. Durkee v. Vt. C. R. R. Co., 29 Vt. 127; Saveland v. Green, 40 Wis. 431; Morgan v. The People, 59 Ill. 58. The telegraph company, then, was the agent of the appellees, and the real and binding contract between appellees and the Paris Flouring Company was at fifty and one half cents per bushel, and the oats having cost appellees delivered in Portland fifty-five cents per bushel, there was a clear loss to appellees of five cents per bushel. The verdict of the jury and judgment of the court were upon that basis, and were correct.

There were no such errors in the ruling of the court in respect to admitting or excluding testimony as should reverse the judgment. The instructions were substantially correct, and as favorable to appellants as the law warranted.

The judgment is affirmed.

Affirmed.