## POSTAL TELEGRAPH–CABLE COMPANY

### v.

## CHARLES D. LATHROP AND LUTHER C. MARLEY.

*Telegraph Companies—Messages—Errors in the Transmission of—Damages—Options—Trading in—Evidence—Instructions—Special Agents—Authority of.*

1. No neglect by a special agent to do a thing touching which he has not been instructed by his principal, will charge the latter.

2. In the absence of evidence tending to show that an error in a telegram did not occur through natural causes, the presumption will be that the same arose from the negligence of the company.

3. If a message delivered is in cipher, an unintelligible jumble of words having no meaning in themselves, a company is not responsible for the damages resulting from an error in its transmission, however clear the meaning might be to one having the key.

4.  If a message on its face appears to relate to a business transaction, involving the purchase and sale of property, the company has notice thereby that it is important, and is liable for the actual damages resulting from an error in its transmission, through its negligence.

5.  In an action brought to recover from a telegraph company for damages alleged to have arisen through errors in the transmission of certain dispatches, this court, in view of the evidence, declines to interfere with the verdict for the plaintiffs.

[Opinion filed July 2, 1889.]

Appeal from the Circuit Court of Cook County; the Hon. Frank Baker, Judge, presiding.

Mr. James L. High, for appellant.

Messrs. Dexter, Herrick & Allen, for appellees.

Gary, J.  This was an action by the appellees against the appellants for damages sustained in consequence of errors in the transmission of dispatches from appellees, in Chicago, to their agents in New York.

The course of business was that the appellees instructed, by telegraph, their agents in New York to buy or sell, for future delivery, coffee, which orders the agents executed by making, in their own names, on the coffee exchange in New York, such contracts as the orders required.  The agents gave the appellees no information as to the parties with whom the contracts were made, nor were such parties informed of the interest of appellees.  The orders had reference to but one grade of coffee, and were numerous, both to buy and sell.  When an order either way had been followed by a corresponding one the other, the execution of the latter, as between the appellees and their agents, canceled both.  The agents credited or charged to the appellees the profit or loss upon both, and between themselves there was nothing left but a balance, that went into their accounts with each other.  The appellees received no coffee, delivered no coffee, on any of the purchases or sales of this character.

The agents in New York in their dealings with parties

there, did, when the time for performance came, if the contracts had not been set off, one against another, and the difference settled, as was usually the case, receive or deliver coffee. as their contracts required; but with that performance the appellees had nothing to do, and of it they were wholly ignorant.

The argument by the appellants now is, that as this was the uniform course of business, it must be presumed that the appellees and their agents intended, when orders were sent and received, that whatever might be done in execution of them should be done according to that course of business, and there seems no reason to dispute that conclusion; and from it they insist that such a course of business is merely gambling in legal effect, and that no cause of action can grow out of anything done or committed in it. It must be borne in mind that the orders were to be executed in New York. The statute of this State, if applicable to such a state of facts, does not govern, and no statute of New York is put in evidence. If any law makes the business illegal it is the common law, which is presumed to be in force in New York. Crouch v. Hall, 15 Ill. 263.

There is nothing in the case to indicate that actual purchase and sales were not intended; nothing indicating an intention to settle contracts at maturity or any other time, by receiving or paying the difference between the contract and the market price. The course of business contemplated buying cheap and selling dear, and where a line could be drawn that would make transactions of that character illegal, and not invalidate legitimate business, no court has attempted to say. Such dealings are sustained as legal in England—Ashton v. Dakin, 4 H. & N. 867; in Kentucky—Sawyer v. Taggart, 14 Bush. 727; and provoked no censure from the Court of Appeals of New York in Cameron v. Durkheim, 55 N. Y. 425.

In the cases in this State—Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33; Pearce v. Foote, 113 Ill. 228; Cothran v. Ellis, 125 Ill. 496, and perhaps some others, the Supreme Court have not settled the facts upon which they animadverted, as they appear in this record.

Postal Telegraph Cable Co. v. Lathrop.

The appellants assign as error that they were not permitted to prove an offer of the use of their line to the New York agents for the purpose of rectifying errors in the dispatches, and also that the court refused to instruct the jury that if the New York agents discovered the error in time to make a sale, without loss, of what they had bought under the erroneous dispatches, the appellees could not recover the loss. They treat these two assignments as involving the same principle. The answer is that the New York agents were in no sense, as shown by the record, general agents of the appellees, but acting in each step of the business under special instructions; and the only discretion permitted to them was in buying or selling within limits fixed by the instructions. No neglect by them to do what they had no instructions from appellees to do, would charge appellees.

The question of general and permanent interest in the case is on the measure of damages. If the appellants could have that settled as they desire, they might easily consent to let the rest of the case go by default.

The dispatches in the course of which the errors occurred, are as follows: "Please buy one thousand August." "Please buy in addition two thousand August, one thousand cheapest month." "Put stop order on five thousand December at seventy cents. This order good until countermanded." The word "two" in the second dispatch should have been "to," and "seventy cents" in the last should have been "seventeen cents," and were so in the originals delivered to the appellants. Now, as there is nothing in the dispatches showing to what they relate, or from which their importance can be ascertained, and as the appellants had no notice that they were important, they insist that they are only liable to refund, with interest, what they received for their transmission. Experts on both sides testified as to their opinion, whether the errors could have been caused by storms, etc. The appellants complain that they were not permitted to prove, by their witnesses, instances when errors had been so caused. The fact that the witnesses were experts did not make proof of the instances any more competent than it would have been

from witnesses called for the single purpose of proving them. Such proof would have multiplied the issues, as each instance might have been the subject of conflicting testimony as to the particular circumstances of that instance.

Whether the errors occurred from causes beyond the control of the appellants, was left to the jury, with the instruction that if the jury found no evidence to the contrary, the law presumes they were caused by want of ordinary care on the part of the appellants. With this instruction appellants find no fault, as indeed they could not, the law being so settled in the first telegraph case in this State—Tyler v. W. U. Tel. Co., 60 Ill. 421.

The cases generally agree that if the message delivered is in cipher, an unintelligible jumble of words, having no meaning in themselves, the company is not responsible for the damages resulting from an error in its transmission, however clear the meaning may be to one having a key. W. U. Tel. Co. v. Martin, 9 Ill. App. 587, where many cases are cited, is an example of this class. On the contrary, if the message on its face appears to relate to a business transaction involving the purchase and sale of property, the current of authority is that thereby the company has notice that it is important, and is liable for the actual damages resulting from an error in its transmission, through negligence of the company. Tyler v. W. U. Tel. Co., 60 Ill. 421; U. S. Tel. Co. v. Wenger, 55 Pa. St. 262; W. U. Tel. Co. v. Harris, 19 Ill. App. 347; Rittenhouse v. Ind. L. Tel. 44 N. Y. 263.

The reason assigned in the last case, that if the agents of the company did not understand the importance of the message they could have inquired, does not seem very convincing, implying, as it does, that they ponder over the meaning of dispatches passing through their hands.

Taking the whole case as this record shows it to be, the only defense for the company was in showing that the error was caused by some extraneous influence over which they had no control; failing in this, they were responsible for the actual loss resulting from their mistake. The judgment must be affirmed without further discussion of details.

*Judgment affirmed.*