## H. H. HUGHES et al., Appellants, v. THE WESTERN UNION TELEGRAPH COMPANY, Respondent.

### St. Louis Court of Appeals, February 21, 1899.

1. **Statutory Construction:** SECTION 2729, REVISED STATUTES 1889, CONSTRUED: DAMAGES: SPECIAL: GENERAL. The special damages mentioned in the statute are only such damages, as are the natural and proximate consequence of the wrongful act of a telegraph or telephone company for failure or negligence to receive, copy, transmit or deliver messages; but the statute does not change nor alter the long and well established rule for the measure of damages for breach of contracts; it merely gives the sendee of a message a right of action which he did not before enjoy.

2. **Pleadings:** EVIDENCE: SPECIAL INJURIES. Special injuries such as do not necessarily follow the act, but which are naturally and proximately produced by the act, must be specially pleaded and proved.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED.

GEORGE H. FEARONS and KARNES, HOLMES & KRAUTHOFF for respondent.

The rule that "where two parties have made a contract which one of them has broken, the damages which the other

ought to recover in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, that is, according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it," applies as well in the case of the failure of a telegraph company to perform its contract at least in respect of a cipher message. Abeles v. Telegraph Co., 37 Mo. App. (1889) 554, 558, 559; Telegraph Co. v. Wilson, 32 Fla. (1893) 527; Telegraph Co. v. Martin, 9 Ill. App. (1881) 587, 591; Mackey v. Telegraph Co., 16 Nev. (1881) 222; Fergusson v. Telegraph Co., 178 Pa. St. (1896) 377. Section 2729, Revised Statutes of 1889, does not change this rule. Telegraph Co. v. Mellan, 45 S. W. Rep. (Tenn. 1898) 443; Markel v. Telegraph Co., 19 Mo. App. (1885) 80, 86; Newman v. Telegraph Co., 54 Mo. App. (1893) 434, 445, 446; Stafford v. Telegraph Co., 73 Fed. Rep. (Cal. 1896) 273; 1 Sutherland Damages, p. 21; Sira v. Railway, 115 Mo. (1892) 127, 136.

GOODE & CRAVENS for appellants.

It was manifest error to strike out the pleadings and exclude the proof of special damages sustained by the plaintiffs on account of the negligence of the defendant's operator in receiving and transmitting the dispatch. The statute on this proposition is plain and makes no distinction between open and cipher dispatches. It charges the defendant with liability for all special damages occasioned by the blunder. R. S. 1889, sec. 2729. Where the subject is uncontrolled by statute the best considered cases hold that the company must respond in substantial damages for failure to properly transmit a message, whether it be open or cipher. Tel. Co. v. Blanchard, 68 Ga. 309; Tel. Co. v. Hyer Bros., 22 Fla. 637;

Tel. Co. v. Fatman, 73 Ga. 285; Tel. Co. v. Reynolds, 77 Va. 173; Daugherty v. Tel. Co., 75 Ala. 168. "To follow copy is an imperative law of the telegraph office." Tel. Co. v. Dryburgh, 35 Pa. St. 298. The telegraph company is responsible for any loss or injury which results from its failure to properly transmit a message. Parks v. Tel. Co., 73 Am. Dec. 589; Berney v. Tel. Co., 81 Am. Dec. 607; Tyler v. Tel. Co., 60 Ills. 421; Reed v. Tel. Co., 135 Mo. 673.

BLAND, P. J.—On June 28, 1897, plaintiffs were partners in the business of inspecting and selling mines in the Republic of Mexico. On June 27, Johnson then in the city of Mexico, sent to his partner at Springfield, Missouri, the following message:

"Mexico City, June 27th.
"H. H. Hughes, Springfield, Mo.:

"Mailed to-day copy our contract go New York see Hearst and push matters.

"(Signed.)                     Covington Johnson."

This message was duly transmitted by defendant and received by Hughes, who on the following day wrote in a plain legible hand the following cipher message, and delivered the same to defendant to be by it transmitted to Johnson, to wit:

"North Springfield, Mo., June 28th, 1897.
"Covington Johnson, Hotel Gillow, Mexico City:

"Irritation go New York Lane alum roots netted price broadness unstudied."

Plaintiff (Hughes) paid the defendant's agent $2.80 as toll for its transmission; the agent of defendant in transmitting the message substituted the word invitation for the word "irritation" in the message; plaintiff alleged that the cipher message when translated was as follows: "Will it be

necessary to go to New York? Lane has agreed on condition that if we could reduce price will pay a commission of thirty-three and one-third per cent." On account of the error in the transmission of the message plaintiffs stated in their petition that Hughes made an unnecessary trip to New York, by reason of which plaintiffs were damaged in the sum of $332.64 for expenses of the trip and the loss of Hughes' time in making it. Defendant tendered the $2.80, the amount paid for transmitting the message, and moved to strike out all that portion of the petition which set forth the special damages. The court sustained the motion and struck out the special damage clause of the petition. Defendant filed no answer. Plaintiffs submitted the assessment of their damages to the court and introduced evidence of the delivery of the message to defendant's agent for transmission, and of its reading when translated, and offered to prove that the error made by defendant's agent in transmitting the message, occasioned Hughes to make a useless trip to New York, and to prove the costs of the trip and the value of his time necessarily taken to make the trip. This evidence, on objection of defendant, was excluded. Judgment was given plaintiffs for $2.80, the amount paid for transmission of the message. From this judgment plaintiffs appealed.

Plaintiffs contention here is, as it was in the lower court, that the measure of their damages is not only the toll paid for transmitting the message, but also the necessary cost to them of Hughes trip to New York and the value of his time necessarily taken to make the trip. "It is established law that telegraph companies are common carriers of intelligence with rights and duties analogous to those of common carriers of goods and persons." Tel. Co. v. Call Pub. Co., 44 Neb. 326. As such common carriers it is their duty to properly transmit all messages delivered to them for transmission when the usual tariff rate is paid or tendered, and it is of no consequence whether the dispatch is in plain English.

or in cipher, provided the cipher is written in words of the English language or in letters of the English alphabet; their duty is to follow copy. Tel. Co. v. Hyer, 22 Fla. 637; Tel. Co. v. Dryburg, 35 Pa. St. 298. And where such message is erroneously transmitted, there arises a presumption of negligence in its transmission against the company. Reed v. Tel. Co., 135 Mo. loc. cit. 673, and cases cited. The defendant in the case at bar tacitly admitted its negligence by tendering the toll paid by plaintiffs, and we do not understand that it denies that *prima facie* it was guilty of negligence in failing to transmit the message as it was written and delivered to its agent for transmission. Negligence being admitted by defendant, the sole question for decision is the measure of the damages for which it is liable in the state of facts presented by the pleading and evidence. It is not alleged in the petition, nor did the plaintiffs offer to prove, that defendant's agent was acquainted with the cipher in which the message was written, or that Hughes notified him of its meaning, and so far as the record discloses the defendant was purposely kept in Egyptian darkness of the intelligence intended to be transmitted by the message, and had no information whatever of its contents from which it might be inferred that it had in mind, or could possibly contemplate the damages which might accrue to plaintiffs by reason of an error in transmission. It can not therefore be inferred that when the contract to transmit the message was entered into, that the defendant had in contemplation that the damages sued for or any other special damages might accrue, should the message be erroneously transmitted, or that any special damages would naturally arise from a failure to correctly transmit. Since the decision in Hadley v. Baxendale, 9 Exch. 341, the measure of damages for a breach of a contract is, to use the language of the opinion, "either such as may fairly and substantially be considered as arising natur-

Sole issue: measure of damages.

ally, that is according to the usual course of things from such breach of contract itself; or such as may reasonably be supposed to have been in the contemplation of both parties at the time when they made the contract, as the probable result of the breach of it." 2 Sedg. on Dam., sec. 879; Sutherland on Dam., sec. 959; Hyatt v. Railroad, 19 Mo. App. 287; Hughes v. Hood, 50 Mo. 350. This court applied this rule as the proper measure of damages in Abeles v. Tel. Co., 37 Mo. App. 554 (a cipher message case), and the same doctrine in numerous cases arising on account of error in transmitting cipher dispatches has been announced by the appellate courts of other states and by the United States Supreme Court, among which the following are some of the more recent. Ferguson v. Tel. Co., 178 Pa. St. 377; Daniel v. Tel. Co., 61 Tex. 452; Candee v. Tel. Co., 34 Wis. 471; Tel. Co. v. Wilson, 32 Fla. 572, overruling Tel. Co. v. Hyer, 22 Fla. 637, announcing a different rule. Cannons v. Tel. Co., 100 N. C. 300; Manvill v. Tel. Co., 37 Iowa, 214; Thompson v. Tel. Co., 64 Wis. 531; Tel. Co. v. Bryant, 46 N. E. Rep. (Ind. App.) 358; Tel. Co. v. Hall, 124 U. S. 444. In a note to Western Union Company v. Cooper, 10 Am. St. Rep. loc. cit. 785, Mr. A. C. Freeman, the editor says, that "The greater number of authorities hold that where a message is written in cipher which is not understood by the agent who receives it for transmission and its meaning is not made known to him by the sender, or where the message is so worded that it conveys no idea of its meaning or importance to the agent of the company, nominal damages only— usually the price paid for its transmission—are recoverable from the company for its default." The ground of these decisions is, that as the meaning and importance of the message were unknown to the company, no other loss or injury could "reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it." In support of this view

he cites, Tel. Co. v. Martin, 9 Ill. App. 587; Tel. Co. v. Gildersleve, 29 Md. 232; Beaupre v. Tel. Co., 21 Minn. 155; Mackey v. Tel. Co., 16 Nev. 222; Baldwin v. Tel. Co., 45 N. Y. 744, and many other cases needless to cite here. The greater weight of authority in this country follows the rule formulated in Hadley v. Baxendale, *supra*, on the measure of damages for breach of contracts, and makes no exception of the rule in favor of the sender of a message by telegraph. The cases making the exception in favor of telegraph message are Daugherty v. Tel. Co., 78 Ala. 168, by a divided court; s. c., 89 Ala. 191; Tel. Co. v. Way, 83 Ala. 342; Tel. Co. v. Blanchard, 68 Ga. 309; Alexander v. Tel. Co., 66 Miss. 161; Tel. Co. v. Reynolds, 77 Va. 173. The latter case, however, is predicated upon a statutory provision in the Virginia code. But appellants contend that the legislature by the enactment of section 2729 Revised Statutes 1889, has, as to telegraph companies as common carriers of intelligence, abrogated this well settled rule for the measure of damages, and made them liable for all special damages which may accrue on account of their negligence in the transmission or delivery of any and all messages, regardless of the fact that they may be in cipher and their meaning purposely kept from the knowledge of the agent to whom delivered for transmission. The clause of the statute on which plaintiffs rely reads as follows: "Every telephone or telegraph company now organized, or which may hereafter be organized under the laws of this state, shall be liable for special damages occasioned by the failure or negligence of their operators or servants in receiving, copying, transmitting or delivering dispatches." It is alleged in the petition, and not denied, that defendant is incorporated under the laws of this state, and for the purposes of the case in hand we must hold the statute applicable. The section in one or another form is found in the revisions of 1855, 1865 and 1879, but seems never to have been construed by any of our appellate

courts.  It is not even mentioned in the Abeles case.  In Markel v. Tel. Co., 19 Mo. App. 80, the Kansas City Court of Appeals held that the damages to be recovered under it might be recovered by the sendee of a dispatch, though there was no contract between him and the telegraph company, following Tel. Co. v. Fenton, 52 Ind. 30, predicated on an Indiana statute similar to ours.  Referring to the amount of damages to be recovered the Kansas City court say, they must be confined to the natural and direct consequences of the defendant's failure of duty, thus adhering to the old rule and refusing to make an exception on account of the statute, or to construe the statute as changing the rule.  In Barrett v. Tel. Co., 42 Mo. App. 542, a telegraph message case, approvingly cites the Abeles case, but does not refer to the statute.  In Newman v. Tel. Co., 54 Mo. App. 434, it was attempted to make the statute cover damages for mental suffering, but this court refused to so construe it.  Notwithstanding the statute of that state, similar to ours, the Indiana supreme court in Tel. Co. v. Bryant, *supra*, confined the damages to be recovered to such as the parties may fairly be supposed to have contemplated when they made the contract.  Special damages are such damages as are superadded to general damages arising from acts injurious in themselves, for example, uttering slanderous words, slander of title, slander of one in his professional calling, or they are an allowance for losses which in a particular case were natural and proximate, though not the necessary consequence of the wrong.  On proof of an injury or wrong, the law presumes the injured party suffered those ill  consequences which can be seen to be the necessary result of the wrong, but special injuries, such as do not necessarily follow the act, but which are naturally and proximately produced by the act, must be specially pleaded and must be proved.  In Roberts v. Graham, 6 Wall. 578, the court said:  "Special damages as contradistinguished from general damages is that which is the

natural, but not the necessary consequence of the act complained of." Substantially the same definition is given in Ratcliff v. Evans, 2 Q. B. 524. The special damages mentioned in the statute in our opinion are only such damages as are the natural and proximate consequence of the wrongful act of a telegraph or telephone company for failure or negligence to receive, copy, transmit or deliver messages; but the statute does not change, nor alter the long and well established rule for the measure of damages for breach of contracts; it merely gives the sendee of a message a right of action which he did not before enjoy. We have with care gone through the able and exhaustive briefs filed by counsel on both sides of this case and read with great interest the able and earnest printed argument filed by counsel for appellants, but our faith in the well grounded and long established rule announced in the Hadley case remains unshaken; the rule is founded in the most profound wisdom, and has received the approval of the great majority of the ablest jurists of both this country and of England. It has also been tested by time and found adequate to afford a correct and just rule for the admeasurement of the damages for the wrongful breach of a contract in every case brought before the courts for adjudication; to depart from the rule would be to enter the uncertain and unknowable realm of doubt and speculation, and to leave it to juries to award damages remote from their cause, speculative in character, and extremely uncertain in quality; it would be to embark upon an unknown judicial sea without rudder to our ship and in the end to behold our long cherished notions and rules of right and justice wrecked and dashed to pieces upon unseen rocks and shoals. We prefer to sail in known waters, and to follow the tried way of safety and security, and to adhere to long and well established precedent. The rulings of the learned trial judge are approved, and the judgment affirmed. All concur.

STATUTORY construction.