## PARKS *v.* ALTA CALIFORNIA TELEGRAPH COMPANY.

TELEGRAPH companies in contemplation of law, are common carriers, and are subject to the rules of law governing the same.

Where A contracts with a telegraph company to have his dispatch transmitted, authorizing his agent to secure a debt due him from a third party, by attachment, and this service is so negligently performed that other creditors of the common debtor obtain the first attachment, and exhaust the assets of the debtor—which would not have been the case had the Telegraph Company performed its contract within a reasonable time, the company is liable not only for the cost of the dispatch, but for the amount of A's claim, which constitute the natural and proximate damages resulting from the breach of contract.

APPEAL from the Sixth Judicial District.

Parks *v.* Alta California Telegraph Company.

The Court below held that a telegraph company was not a common carrier; was not in any sense an insurer; that a message had not any market value; and that the measure of damages was limited to the cost of the dispatch, which being two dollars and fifty cents, judgment therefore was rendered. Plaintiff moved for a new trial, which being denied, this appeal was taken in his behalf.

*Geo. Cadwalader*, for Appellant.

1. The telegraph is a public vehicle; a common carrier; whose value consists in its accuracy and dispatch, which, to be preserved, must be guarded by the strict rules defining the liability of common carriers.

2. No exemption from such liability can be claimed upon the ground that the motive power is a subtle, and often uncontrollable, agent.

3. Debts have all the characteristics of property; and the negligence of the defendant destroyed the value of the debt, owing to the plaintiff.

4. The measure of damages is the cost of the dispatch and the amount of the debt. (5 N. H. 357; 14 Peters, 99; 1 Starkie, 410; 19 Johnson, 381; 9 Bing. 68; 6 Id. 212; 17 Ala. 689; 7 Hill, 61; 13 How. U. S. 307; 18 Vt. 620; 10 Cal. 239; 7 Cush. 522; 8 Pick. 356; 9 Wend. 325; 8 Exchequer, 401; 10 Id. 401; 4 Id. 388; 20 Wend. 327; 24 Penn. 114.)

*H. H. Hartley*, for Respondent.

1. The rules of law governing common carriers, do not apply to telegraph companies. They are not insurers because a message is without value.

2. The legal measure of damages is the price paid for the dispatch. The loss of the debt is too remote, and the maxim is *causa proxima non remota spectatur*. (*Coggs* v. *Bernard*, 2 Lord Raym. 909; 2 Kent, 558; 1 Pick. 50; Sedg. on Damages, 112; 5 Hill, 472; 15 Pick. 297; 1 Iowa, 406; 1 Lord Raym. 546; 3 Denio, 406; 17 Mass. 168; 21 Wend. 342.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

On the 7th day of October, 1856, about 7 o'clock, P. M. the defendant contracted with the plaintiff, at Mokelumne Hill, for the immediate dispatch of a message to the city of Stockton. The dispatch was directed to the agent of the plaintiff, in these words: "Due, 1,800; attach if you can find property; will send note by to-morrow's stage." This was in answer to a dispatch by the same line received that morning from plaintiff's agent, informing the plaintiff of the failure of a firm of Gillingham & Co. and inquiring the amount due from them to him. An accident prevented the sending of the message, of which the plaintiff was not informed until 9 o'clock, A. M. of the next day. The dispatch was forwarded the next day, which reached the agent at about 12, P. M. but the writ was not delivered to the Sheriff until 6 P. M. At that time, other attachments had been issued at the suit of other creditors, and the property of the defendants all seized under these subsequent attachments, so that nothing was made by the plaintiff's writ. The firm are now insolvent, and the plaintiff claims that he has lost his debt by the failure of defendant to transmit this message.

It is found that this failure to send the message was by the gross neglect of the defendant's agent.

Some evidence was offered tending to show that the debt of plaintiff would have been made if the transmission had been made in time, or if the defendant's agent had informed the plaintiff that the defendant could not send the dispatch, that the plaintiff would have gone that night to Stockton, and been in the city early the next morning, in time to have taken proceedings before the other creditors sued and levied.

The rules of law which govern the liability of Telegraph Companies are not new. They are old rules applied to new circumstances. Such companies hold themselves out to the public as engaged in a particular branch of business, in which the interests of the public are deeply concerned. They propose to do a certain service for a given price. There is no difference in the general nature of the legal obligation of the contract between carrying a message along a wire and carrying goods or a package along a route. The physical agency may be different, but the essential nature of the contract is the same. The breach of contract in one case or the other, is, or may be, attended with

Parks *v.* Alta California Telegraph Company.

the same consequences; and the obligation to perform the stipulated duty, is the same in both cases. The importance of the discharge of it in both respects, is the same. In both cases the contract is binding, and the responsibility of the parties for the breach of duty is governed by the same general rules. Nor do we perceive the difficulty experienced by the learned Judge, below, either in estimating the damages or ascertaining the cause of them. The process of ascertainment is the same in this as in other cases of carriers. The breach of the contract entitled the plaintiff to nominal damages, if no real damages were shown. The question of real or special damages, was a question of fact, and this question is dependent upon certain considerations, which, probably, in this case could have been better left to a jury under appropriate instructions, than decided by the Court. For example, the plaintiff had a right to have his message sent according to contract. To ascertain the damages sustained by the breach of this contract these inquiries are pertinent : if the message had been sent, was the plaintiff's agent in Stockton, at the time? and would he have received it? next, would he have then taken out an attachment on the debt? at what time could he have done this? could he have given security? could he have procured Attorneys to issue the writ? at what hour could, and would, it have been put in the hands of the Sheriff? was property there of the debtor's subject to the writ? If a telegraphic dispatch had reached the agent at eight o'clock on the seventh, the agent would have been bound to act at once; it is to be presumed that he would have done so; at least, he can testify whether he would. If he had, the Sheriff is to be presumed willing to do his duty; if he did not, he would be liable to the plaintiff; and thereby the plaintiff's debt would be secured.

We see no greater difficulty in this case than in a large class of cases upon which Courts have frequently adjudicated. Take the case of an Attorney : A note is placed in his hands for collection; he fails to sue; other creditors sue on claims placed later in the hands of other Attorneys; these last get judgments, and exhaust the property of the common debtor. Upon showing that the claim was just; that the Attorney failed to sue; that other creditors sued and obtained judgment on suits commenced.

later than the time the Attorney might and ought to have sued, the Attorney is held liable.   It is true that it might be argued that all the intermediate persons might or might not have neglected their duties; but it is not to be presumed.   On the contrary, the presumption of law is, that persons intrusted with specific duties will perform them; or if there is no presumption on the subject, the question whether they would, if the defendant had done its duty, becomes a question of proof for a jury or for the Court.

Suppose a man, on the eve of the expiration of a policy of insurance on his house, telegraphs to his agent to renew the policy immediately, the agent having the funds and the authority of the principal, and the telegraph company neglects to forward the message, and the house is burned a few days afterwards, could the company defend upon the ground that it could not be known whether the agent would have insured or not? Or, suppose that A bargains for a telegraphic dispatch to his agent to protest a bill of exchange, could the company, if it neglected to send it, set up that the damages were too remote, for it could not be known whether the agent would have taken the bill to the Notary, or the Notary have protested, or given the notice; or whether, if the notice were given, the indorser could have been compelled to pay?   Would not the contract, the fact of the bill being due, the agent in the place, the Notary at hand, the apparent solvency of the indorser, be enough to charge the company?   At all events, would not the plaintiff be allowed to prove that these things would have been done by the testimony of those who know or have opportunities of knowing the facts, in order to make out his case against the company? It seems to us that the loss of the debt would be the natural and proximate damages resulting from this breach of contract; and so in this case, the plaintiff had a debt on Gillingham & Co.; he wished to get out an attachment; he contracted with the defendant for the conveyance of a telegraphic message to his agent to take out an attachment; in the usual course of things, if the message had been delivered, the agent would have received it on the evening of the seventh; the papers could, with the most ordinary diligence, have been made out, and the writ issued early on the morning of the eighth; placed in the

Sheriff's hands shortly afterwards, the plaintiff's writ would have been entitled to precedence over most of these attachments; there was enough property, as seems to be admitted, to secure the debt. If the facts warrant these conclusions, the plaintiff, we think, was entitled to judgment.

As, however, the Court below has not found these facts directly and distinctly, we think it better to remand this cause, that a full investigation may be had. We are not to be understood as assuming these statements as facts fully proven. We only take them to be such for the purpose of the legal propositions announced. Upon another trial, the facts can be fully elicited, and the conclusions reached from the proofs, without any prejudice arising from this opinion.

The opinion of the Court below is not in accordance with these views, and the judgment is reversed and cause remanded for another trial.