C. H. ALEXANDER ET AL. *v.* WESTERN UNION TELEGRAPH CO.

66   161
79   161
79   691
66   161
85    70

66      161
d92     855

1. TELEGRAPH COMPANY.  *Negligence.  Delay in transmission.  Damages.*

In this case the declaration alleges the following : Plaintiffs were negotiating for the purchase of a lot of land in Chattanooga, Tenn.  On December 6, 1886, they delivered to the telegraph company at Starkville, Miss., a message, addressed to the agent of the owner at Chattanooga, in the following words : "Yours of 3d received.  Get option till Monday if can, if not close trade and fix papers."  This was in answer to a letter offering the lot at three thousand dollars and asking a response on that day.  The price for sending the message was paid, and the operator was informed of the importance of promptness.  Through negligence of the company the message was not delivered until late the next day.  Meantime the lot was sold to another and was then worth five thousand dollars.  *Held,* on demurrer, that the plaintiffs were entitled to recover the damages sustained by reason of the failure to purchase the lot; and this whether the message is to be construed as an acceptance or not.

2. SAME.  *Authority of agent.  Statute of frauds.*

It being alleged that appellants would have procured a good title to the lot, if the message had been properly transmitted, it is immaterial whether the agent to whom it was sent had written authority from the owner to make a contract for the sale of the land.

3. SAME.  *Acceptance not necessary.  Right to recover.*

It was not essential to plaintiffs' right to recover damages that the message should have been an acceptance of the offer made.  It being alleged that they would have procured a good title to the lot but for the delay in sending the message, this averment is capable of proof, and the damages can be established with reasonable certainty.

4. SAME.  *Measure of recovery.  Damages when not speculative.*

Appellants, under the allegations admitted by the demurrer, are entitled to recover the difference between the price at which the lot was offered to them, and its actual market value at the time when the message should have been delivered at Chattanooga.  Such damages are not speculative and contingent, but result directly from the breach of duty.

5. SAME.  *Nominal damages.  Pleading.*

It is error to sustain a demurrer to a declaration that shows a breach of a contract and damages.  In any event, nominal damages are recoverable.  Aside from other questions, plaintiffs in this case were entitled to the price paid for transmission of the message, if no more.

66 MISS.—11

6. PLEADING.   *Demurrer overruled where declaration good in part.*
  Where a declaration or either count is good for a recovery, if only in part, a demurrer to the declaration as a whole will be overruled.

7. TELEGRAPH COMPANY.   *General duty of company.*
  Telegraph companies undertake to serve the public, and are under obligation to perform their contracts without negligence or unreasonable delay. Rapidity, as well as accuracy, of communication commend them to popular favor, and the law imposes upon them liability in damages for losses that may be traced directly, or with reasonable certainty, to their negligence.

FROM the circuit court of Oktibbeha county.

HON. LOCK E. HOUSTON, Judge.

The case is stated in the opinion of the court.

*Brame & Alexander* and *Wiley N. Nash,* for appellants.

1. It was not necessary that the *authorization* of Carothers, the agent, should be in writing. See Tenn. statute of frauds, code of Tenn., 1884, § 2423 and note. Under the statute of this state, which was identical with that of Tennessee prior to the code of 1857, it was held that it was not necessary that the authority of an agent to make a valid contract for the sale of land should be in writing. *Curtis* v. *Blair,* 26 Miss. 309.

But it is immaterial whether Carothers had authority to conclude a valid binding contract for the sale of the land or not.

The declaration alleges that plaintiff *would have secured a good title to the lot if the message had been promptly sent,* and the demurrer admits this. If plaintiff can show that Kessler owned the lot and stood ready to make the deed, and would have done so if the message had been received on the 6th, what difference does it make if we concede that Carothers was without authority to make the contract? The manifest error in the action of the court below was in applying to this case the same rules that would govern if this were a suit by plaintiffs against the owner of the land for specific performance. In deciding upon the liability of the telegraph company for negligence in sending a message very different rules apply. In the one case it would be necessary to show a valid contract between the parties in order to enforce it; in the other the plaintiff

shows the failure to *make* a contract by reason of the wrongful act of the company, *a third person.*

2. We contend that the telegram was an acceptance of the offer. It was tantamount to saying : " Do better if you can, but if not, close the trade." It is alleged that Carothers had no authority to sell an option, and that Kessler would not have given one. If the message had been delivered, Kessler would have said : " No, I will sell no option ; fix the papers." If the lot had gone down in value two thousand dollars, he could have held plaintiffs to the bargain. Plaintiffs were in for the purchase of the lot at three thousand dollars the instant the message was sent.

3. But it is not essential that the message should be construed as being within itself an acceptance of the offer, so as to close a contract with the seller of the lot. Plaintiffs are entitled to recover if by the negligence of the company, they were *prevented from making a contract,* and thereby from securing a purchase that would have yielded a profit of two thousand dollars cash. Of course they are not entitled to speculative profits. Here the actual market value of the lot was five thousand dollars, and plaintiffs would have secured a title to it for three thousand dollars. No difficulty about proving such allegations as these with all reasonable certainty. We are not required to prove anything to a moral certainty. It is immaterial that the subject of this attempted purchase was land. The same rule of liability applies *so far as the telegraph company is concerned,* as if it had been corn or wheat, or cotton or stocks, or any kind of personal property. In the numerous commercial transactions of this country, in respect to either land or personal property, how very few telegrams in themselves, embody complete, technical contracts ! Yet will it be said that a telegraph company, though guilty of gross negligence, is never to be held liable in damages in a case like the present, unless the message, if sent, would have consummated such a contract ? The wrong consists in the negligence of the company, the unfaithfulness of the servant, which is the direct cause of the loss of a profitable bargain or purchase. In such a case the law will not allow the wrongdoer to escape on the ground that something *might*

have happened to prevent the consummation of the contract. The duty of the telegraph company is to *promptly send the message*, no matter what form it is in, and if this is not done, and injury results, the injured party is entitled to prove what *would have been done* if the duty of the carrier had been promptly complied with. If we go into the field of conjecture and speculation, it cannot be said that anything is certain. The rule contended for by opposite counsel would preclude recovery in every case where damages are attempted to be shown as the consequence of negligence or an unlawful act. Resort being had to the wires by parties in negotiation, when the telegraph company fails to transmit a message, it has nothing to do with the statute of frauds as between the contracting parties.

It is perfectly competent to prove *what would have been done* if a telegraphic message had been promptly transmitted, as a means for fixing the damages against the company for a failure to deliver. *Parks* v. *Tel. Co.*, 13 Cal. 422 ; *True* v. *Tel. Co.*, 60 Maine 9 ; *Fatman* v. *Tel. Co.*, 73 Ga. 288 ; *Daughtry* v. *Tel. Co.*, 75 Ala. 168 ; *Tel. Co.* v. *Hyer*, 22 Fla. 637 ; s. c. 1 Am. St. R. 222, note on p. 228.

4. Neither of the four cases relied upon by opposite counsel sustains the position for which they contend ; but, on the contrary, in so far as they are applicable at all, these are all authorities for the plaintiffs in this case. This is especially true of *Tel. Co.* v. *Hall*, 124 U. S. 444. In the case of *Booth* v. *Rolling Mill Co.*, 60 N. Y. 487, the suit was *directly between contracting parties* as to the effect of a contract, and did not involve a telegraph company. The same is true of *White* v. *Miller*, 71 N. Y. 133, and of *Squires* v. *Tel. Co.*, 98 Mass. 232. The following language is used in *White* v. *Miller :* " Gains prevented as well as losses sustained may be recovered as damages for a breach of contract where they can be rendered *reasonably certain*, and have *naturally resulted from the breach.*" We ask no better exposition of the law as applicable to this case.

In all the cases where merely nominal damages have been allowed, and where consequential damages (such as are claimed here) have been rejected, the messages were in cipher and the company was

not admonished of the importance of the business or that such damages would likely result from a failure to transmit.   Here the company was distinctly informed of the importance of the message and of the necessity for promptness.

Telegraph companies hold themselves out as ready to transmit messages of every character, at rates which they fix without regulation or control.   They prescribe their own rates in the conduct of a business which the public must of a necessity transact through them.   With increased facilities and greater skill, they are daily becoming better prepared to discharge their duties, and public policy demands that they should be held to a high degree of diligence and a strict liability.

5. In any view of the case, the judgment must be reversed, because the plaintiff was entitled, at least, to nominal damages, the price paid for transmission of the message, and the like.

*L. Brame* and *C. H. Alexander* each made an oral argument.

*E. H. Bristow,* for appellee.

1. There are two cases, and only two, in which a party can recover damages for a failure to *make a speculation,* occasioned by a breach of contract. These are : (1) Where the breach of the contract has caused him to make a purchase at a *greater* price or a sale at a *less* price than if the breach had not occurred ; and (2) where the breach of the contract has *ipso facto* prevented the closing of a bargain at a stipulated price—and the party, using reasonable diligence, cannot get as favorable terms.

In case of a failure to deliver a message directing a purchase, a telegraph company is liable to pay *compensatory* damages (1) when, by reason of the non-delivery, the sender *makes a purchase* at a higher price than if the message had been promptly delivered ; or (2) when the message, if promptly delivered, would have *ipso facto concluded* a contract at a certain price, and, owing to the failure to deliver, the bargain is lost.   In the former case the measure of damages is the difference between the price *paid,* and that at which the property *could have been had.*  In the latter case, the measure is the difference between the price at which the purchase *would have been made* if the message had been promptly delivered, and the price

at which it could have been had afterward by the use of reasonable diligence. *Tel. Co.* v. *Hall*, 124 U. S. 444. In all other cases, though a profitable speculation *might*, and probably *would*, have been made, yet damages cannot be recovered, because they cannot be made " *reasonably certain by the evidence.*" *Boothe* v. *Rolling Mills*, 60 N. Y. 487 ; *White* v. *Miller*, 71 N. Y. 173.

" All remote, speculative, and uncertain results, as well as possible profits and advantages which might have arisen from the fulfillment of the contract, must be excluded as forming no part or legitimate basis on which to determine the extent of the injury actually caused by a breach." *Squires* v. *Tel. Co.*, 98 Miss. 238.

Here no transaction was, in fact, had, and there being neither a purchase nor a sale, there was no actual loss, and consequently no damages under the rule above stated.

If the message of plaintiffs had been promptly delivered, *it would not have closed the contract.* The offer by Carothers was *positive and unconditional to sell,* provided there was an acceptance by Dec. 6. To this offer to sell plaintiffs replied : "*Get option if you can ; if not,* close trade." The message, *on its face*, must be an *acceptance. Squires* v. *Tel. Co.*, 98 Mass. An acceptance must comprehend the whole proposition, and must not qualify its provisions. 1 Pars. Con. 476. A *conditional acceptance* is not sufficient, and the unimportance of a modification does not change the principle. Ib. 477. Plaintiffs' minds never absolutely consented to a *purchase ;* they wanted an *option,* and put that idea foremost in the message. Why do they not sue for the failure to get an *option ?* An option is not a sale, and it is not an incident to a sale.

The question is not what Carothers would have *probably* done, but what Kessler would have been *compelled* to do if the message had been promptly delivered. The condition stands in the way of an absolute acceptance, " Get an option *if* you can, and *if* not, close the trade." Touchstone says, " Your *if* is the great peacemaker." The law says it is an everlasting contract-breaker.

Plaintiffs certainly did not inform the company that an option could not be obtained, for that was unknown to them. The damages to be recovered for the failure to transmit a message

" must be such as might properly be deemed to have been in con-templation of the parties when the contract was entered into." *Squires* v. *Tel. Co.*, 98 Mass. 238.

The object of the law in making these corporations liable in damages is not to *punish* them ; it is simply to make those whom they have injured *whole*. The courts have inexorably refused to allow themselves to be made the arena of *speculation*. *Chateaux en Espagne* are delightful possessions, but are neither listed for taxa-tion, nor can they form the basis of any claim in a court of law.

2. The third and fourth counts show that Carothers was not the agent of Kessler but was the agent of the Southern Land and Loan Co., and as there was only the one transaction, the whole declaration is defective.

A careful examination of *Curtis* v. *Blair*, 26 Miss., shows that it was not there held that the *authorization* of an agent to sell land need not be in writing. And, so far from deciding that the appointment of a sub-agent need not be written, it decides exactly the reverse. " *Postesta delegata, non potest delegari.*"

The Tenn. statute of frauds is substantially like our own on this point, and under it the authority of the agent must be in writing. In view, however, of the allegation of the amended declaration that Carothers was " duly and legally authorized," it was not necessary to aver that his authority was *written*.

In the fourth count plaintiffs aver that Carothers was *their* agent to buy the land—possibly the agent of both parties to the transaction.

But under whatsoever circumstances, and to whomsoever ad-dressed, we claim that this message does not on its face purport to accept an offer or close a trade.

We respectfully ask an affirmance.

*Sykes & Richardson*, on the same side.

Regardless of the various ways in which the case is stated in the several counts, the telegram threads its way through each, and is the foundation of the suit.

The court is familiar with the rule that the damages must be such as may be fairly supposed to have entered into the contem-

plation of the parties when they made the contract, that is, such damages as might be naturally expected to follow its violation. *Hadley* v. *Baxendale,* 9 Exch. 341; Law of Telegraphs, § 406.

1. *Is the message an acceptance?*

This is the main question in the case.

To constitute an acceptance there must be a clear and definite proposition on the one side, and an acceptance on the other, equally clear and distinct. The acceptance must not introduce any new feature, but there must be a *coming together of the minds on every point.* Chitty on Con. 9, 10, 11; *Bruce* v. *Pearson,* 3 Johns. 534; *Tuttle* v. *Love,* 7 Johns. 470; *Eleason* v. *Henshaw,* 4 Wheat. 225. If the alleged acceptance is not to the exact thing offered, and new terms are introduced, they constitute an offer on the other side and leave the question open. Bishop on Con., §§ 322, 324; *Rommel* v. *Wingate,* 103 Mass. 327; *Brumer* v. *Wheaton,* 46 Md. 363; *Derrick* v. *Monette,* 73 Ala. 75; *Baker* v. *Holp,* 56 Wis. 100; *Stagg* v. *Compton,* 81 Ind. 171.

Alexander was authorized to use the wire. From the moment the message was handed to the operator, if it be an acceptance, the contract was complete. Bishop on Con., § 328. This being true, then suppose a bill is filed against Kessler for specific performance. Unquestionably the answer would be that the telegram contained new terms, and was *not an acceptance of the offer.* This determines the question sharply.

2. *Is the telegram an absolute request or order to buy?*

It is immaterial whether appellants knew that an option could or could not be obtained. Appellee is only bound for a violation of *its* contract. If damages result by reason of anything *aliunde,* or that was unknown, it is not responsible. There is no question about cipher message, but about *very plain English.* If the message had been delivered, it would have devolved upon Carothers to get an option; failing in that, to get the fee. If he had secured an option, his duty would have been discharged. Then this was not an order to buy the fee. If buying the option was the primary thing, why not sue for the damage consequent upon the failure to

get that ?   The theory of the fourth count is that it was impossible to get an option, and that there was no intention of obtaining one, yet the option is made the "crown jewel" in the telegram. It is, however, rejected by the builders, and the effort now is to hold the company to the same measure of responsibility as if had no place in the contract.   This, if permitted, would be to hold the company to a contract it never made, and would operate as a trap and a fraud.   The very message that was written out and delivered to the company is the one upon which its liability is to be determined, and appellants cannot now be allowed to show that the option part was understood to be a joke.   *Kinghorne* v. *Tel. Co.*, reported in Allen's Tel. Cases, p. 113.

Buying an option is a very different thing from buying the fee, and the chances are here that if the option had been obtained, the "boom" would have exploded, and the fee would have remained in Kessler.

Appellants have paid nothing, their losses seem imaginary, but they have had experience, and are better equipped for the next "flurry" in real estate.

*E. O. Sykes* also made an oral argument.


ARNOLD, C. J., delivered the opinion of the court.

These facts are stated substantially, both in the original and the amended declaration—appellee, as a corporation duly chartered, was engaged in the business of receiving and transmitting for hire, telegraphic messages for the public—that its lines extended from Starkville, Miss., to Chattanooga, Tenn.—that appellants desired to purchase a certain lot of land in the latter place, and were informed on the 3d of December, 1886, by letter, from the agent of the owner of the lot, that it could be bought for three thousand dollars, and that if they wanted it at that price, to inform him by wire, on or by the 6th of December, 1886, of their acceptance—that on that day, appellants delivered to the operator of appellee, at Starkville, a message, and paid the price for its transmission, to the agent of the owner of the land at Chattanooga, in these words :

"STARKVILLE, MISS., Dec. 6, 1886.

"NEIL W. CAROTHERS, Attorney-at-Law,

"Chattanooga, Tenn.

"Yours of the 3d received. Get option till Monday, if can, if not, close the trade and fix papers."

That the message was delivered to the operator at Starkville, about 1 o'clock P. M., on the 6th of December ; that it was the intention of appellants to purchase the lot, *and they were prepared to do so at the price at which it was offered, and that they would have secured it and a good title to the same, if their message had been promptly delivered at Chattanooga—that at the time . the message was delivered to the operator at Starkville, he was informed of appellants' purpose in sending it, and of the importance of it being sent and delivered promptly*—that on account of the negligence of appellee, the message was not delivered at Chattanooga until about 8 o'clock P. M., on Tuesday, the 7th of December, 1886— that it resulted from the delay in the transmission and delivery of the message that the lot was sold to another before receipt of the message on December the 7th, and appellants lost the purchase and bargain and sustained the actual loss and damages claimed—*that upon being informed of their failure to obtain the lot and of its purchase by another, appellants promptly endeavored to buy it from the purchaser, but could not get it for less than five thousand dollars*— that although the lot was offered at three thousand dollars, it was of the market value of five thousand dollars, and at the time of the institution of the suit it had advanced in value so as to be worth eight or ten thousand dollars.

Appellants claimed as damages, the difference between the price at which the lot was offered to them, and its actual market value, at the time when the message should have been delivered at Chattanooga, and in the original declaration, the statutory penalty of twenty-five dollars allowed by the act of 1886, for the failure to deliver telegraphic messages within reasonable time, was also claimed.

Appellees demurred to the original declaration, and assigned in substance, for special causes of demurrer—that no cause of action

was shown in the declaration—that the damages sued for were not actual and immediate, but remote, contingent, and speculative—that it was not shown that plaintiffs suffered any actual loss by the alleged negligence—that it did not appear that if the message had been promptly delivered, the trade for the land would have been concluded—that the statutory penalty sought to be recovered, in connection with other damages, could not, under the constitution and laws of the United States, be enforced.

The demurrer was sustained and leave given the plaintiffs to amend, and an amended declaration was filed, and to it there was a demurrer.

The special causes of demurrer to the amended declaration, were in effect, the same as those to the original, with the additional causes—that it was not shown that the agent of the owner of the land, had any authority in writing, to sell or contract for the sale of the land, and that the message was not an absolute, but a conditional acceptance of the offer made by the agent of the owner of the land.

The demurrer to the amended declaration was also sustained, and appellants declining to amend further, judgment final was entered against them, and they appealed, and assign for error the action of the court in sustaining the demurrers.

In any view of the case, appellants were entitled to recover nominal damages—the amount paid for the transmission of the message —if no more, and for that reason, the demurrers should have been overruled.  *Parks* v. *Tel. Co.*, 13 Cal. 422 ; *Daughtry* v. *Tel. Co.*, 75 Ala. 168.

But they should have been overruled on broader grounds.  If the facts stated in the declarations, and admitted by the demurrers to be true, do not constitute a good cause of action against the telegraph company, it is difficult to conceive what would.  We construe the message to be an acceptance of the lot on the terms at which it had been offered, but whether it was or not, and whether or not it was of itself sufficient to close the trade for the lot, it is alleged in the declarations and admitted by the demurrers, that if the message had been promptly transmitted and delivered, appellants would

have obtained the lot, and that by the delay in the delivery of the message, they lost the purchase, and suffered the loss and damages for which they sue. These allegations might have been avoided by facts, but not by demurrer.

In the face of the admitted fact that appellants would have procured the lot and a good title to the same, if their message had been duly delivered, it was entirely immaterial whether Carothers, the alleged agent, had written authority to sell or not. That might have been an important matter in a suit between appellants and the owner of the lot touching the validity of the sale, but if appellants prove what they allege, it would be no defense to the telegraph company, for a violation of its contract.

It is true, that under the decision of the supreme court of the United States, in *W. U. Tel. Co.* v. *Pendleton*, 122 U. S. 347, the penalty imposed by our statutes on telegraph companies for failure to deliver messages within a reasonable time, and which was claimed in the original declaration, cannot be enforced, because the message was to be delivered beyond the limits of the state; but that was no cause for sustaining the demurrer to the original declaration. The statutory penalty was but part of the amount claimed in a declaration of but one count. The demurrer was to the whole, and not to a part only of the declaration. In such case, the demurrer must be overruled. 1 Chit. Pl. 665.

We do not find that the damages claimed, fall within the category of being too speculative, remote or contingent, to be recoverable. On the contrary, they appear to be the actual damages that resulted directly, and naturally, from the breach of duty and contract upon which the complaint is founded, and they are capable of being ascertained and established, not only with reasonable, but with as near absolute certainty, as any class of damages.

On the admitted facts it requires no expansion of the just rules of law, to hold the telegraph company liable for the damages claimed.

It seems like attempting to cut the throat of common sense and knock the brains out of reason, to maintain the proposition, that a man sustains no loss or injury cognizable by law, when he is

offered property for three thousand dollars, worth five thousand in the market, and which he is ready and anxious to buy, but is prevented from doing so, by negligence such as is disclosed in the record, and not denied, or avoided by any excuse or justification.

In *Rittenhouse* v. *Independent Line Tel.*, 44 N. Y. 263, where the operator of the telegraph company made a mistake in the article ordered by telegram, it was held that the company must make good the difference between the price of the article actually ordered, at the time when the dispatch should have been delivered, and the price of the same article, if it had been purchased as soon as the mistake was discovered.

In *U. S. Tel. Co.* v. *Wenger*, 55 Penn. St. 262, there was a failure by the telegraph company to deliver a message to buy certain stock, which advanced in price between the time when the message should have been delivered, and the time it was purchased under another order. It was held that the company was liable for the amount of the advance in the price of the stock between these dates.

In *W. U. Tel. Co.* v. *Hyer Bros.*, 22 Fla. 637, appellees, ship brokers in Pensacola, having been engaged by a customer to charter a vessel, sent a telegram to their correspondent in Barbadoes, making an offer for the charter of a vessel. The offer was accepted and a message sent to appellees informing them of the acceptance, but it was not delivered to them by the telegraph company. Their correspondent in Barbadoes, as their agent, signed the usual charter-party for appellees. Not receiving the answer to their message, they told their customers that they had failed to charter the vessel, whereupon he chartered another. Two weeks afterward the vessel came to Pensacola, as required by the charter-party, signed by appellees' agent in Barbadoes. They were compelled to re-charter the vessel at a loss, and it was held, that the telegraph company was responsible to appellees for such loss, and for their time and exertions in re-chartering the vessel.

In *Daughtry* v. *American Union Tel. Co.*, 75 Ala. 168, it was decided, that when a telegraph company receives, and for a valuable consideration agrees to transmit and deliver a message,

directing the sale of cotton owned by the sender, and without lawful excuse, fails to deliver the message in due time, the sender may recover the actual damages sustained by the fall in the price of the cotton between the time it would have been sold, if the message had not been delayed, and the time it was actually sold ; with the qualification however, that so soon as the sender discovered that his message had not been forwarded, it became his duty, within a reasonable time, to repeat the order or direction to sell, or to take other requisite steps to prevent further loss.

In *True et al.* v. *Int. Tel. Co.*, 60 Me. 9, plaintiffs having received an offer of a cargo of corn at ninety cents per bushel, delivered to the telegraph company, to be sent to the person making the offer, the following message—" Ship cargo named at ninety, if you can secure freight at ten." The message was not delivered by the company, by reason whereof, plaintiffs failed to obtain the corn on the terms offered, and the price of corn and freight immediately advanced, and plaintiffs lost the profits which they might have made thereon. It was announced by the court, that the measure of damages recoverable in the case, was the difference between the price named in the offer, and that which plaintiffs would have been obliged to pay at the same place, in order by due diligence after notice of failure to deliver their telegram, to purchase the like quality and quantity of corn, with the same rule in relation to the freight.

In *W. U. Tel. Co.* v. *Fatman*, 73 Ga. 285, a ship broker desired to furnish a vessel for the use of another person, and if he had done so, he would have been entitled to certain commissions for his services. He dispatched to Liverpool for a vessel, and a message requiring immediate reply and offering a suitable vessel, was delivered to a telegraph company to be communicated to the broker, but the company failed to deliver it to him within a reasonable time, and on that account the vessel was not obtained. The broker sued the telegraph company and recovered judgment for the amount of the commissions he would have earned, if the message had been promptly delivered, and the vessel had been secured, and the judgment was affirmed by the supreme court of Georgia.

In *Parks* v. *A. & C. Tel. Co.*, 13 Cal. 422, Parks delivered a dispatch to the telegraph company, authorizing his agent to secure a debt due him from a third party, by attachment.  By the negligence of the company in transmitting the message, other creditors obtained the first attachments, and seized the whole of the property of the debtor.   The court considered that the question of damages was one of fact, and found no difficulty in the case as far as ascertaining the amount of damages or the cause of them was concerned, and held that Parks was entitled to recover from the telegraph company the amount of his debt, if he could show that it was lost in consequence of the negligence of the company.

These cases, and others to the same effect, which might be cited, impose no new or unusual burdens on telegraph companies.   They simply apply old principles to new conditions.   Such companies undertake to serve, and are under obligation to serve, the public generally—all who choose to employ them.   Their occupation is one of a public nature.   The rapidity and accuracy with which they communicate intelligence, commend them to popular favor and confidence.   Much of the business and of the most important affairs of life are affected and controlled by telegraph companies.  Negligence and unreasonable delay in their operations would impair their usefulness and render them a source of danger, rather than of advantage to the public, if the law afforded no remedy.   The law requires that their contracts shall be performed in good faith, and that their functions shall be discharged with reasonable care, and that they shall answer in damages for losses and injuries that may be traced directly, or with reasonable certainty, to their negligence.

*Judgment reversed, demurrers overruled, and cause remanded.*