GARDNER & CLARK v. POSTAL TELEGRAPH AND CABLE COMPANY.

(Filed 26 April, 1916.)

**1. Telegraph — Contract — Breach — Negligence — Commercial Telegrams — Measure of Damages.**

A telegraph company is liable, on breach of its contract to properly transmit and deliver a commercial message, for such damages as were in reasonable contemplation of the parties, which are capable of ascertainment with a reasonable degree of certainty, and may extend to those arising from collateral agreements growing out of the telegraph company's contract to transmit and deliver the telegram, when coming within the rule stated.

**2. Same—Collateral Contracts—Resales—Evidence—Notice.**

Upon the breach of contract of a telegraph company to properly transmit and deliver a message ordering the shipment of goods for resale, and this should reasonably have been known to the company from the course of the sender's dealings with it and the character of the business he carried on at the place, the latter may recover as damages the loss of profits thereby prevented, which may be ascertained by reference to the difference between the contract price and the prices prevailing in the market; and when the goods are bought to be sold again by specific methods and in the regular course of dealings of the purchaser, and these conditions should reasonably have been known to the company, the profits ascertained by the resale made in the manner contemplated affords more accurate data for estimating the damages actually attributable to the breach, and may be shown in the absence of evidence tending to show that they were made at extravagant prices or under unusual conditions.

**3. Same—Constructive Notice—Dealings.**

A grocer sent a telegram in the month of June to a commission merchant with whom he customarily dealt, reading, "Ship today 150 crates of fancy cabbages, same price or less," with evidence tending to show that the cabbages were not sent, owing to the failure of the defendant

to transmit and deliver the message; that his method was to order cabbages by telegraph through the defendant, handling two or three car-loads a week through the spring and summer, and sell them to his customers pending their arrival, and he had sold the whole shipment for delivery on a certain day, by which time it should have been received. There being no evidence that the resales were made under exceptional circumstances, it is *Held*, under the evidence in this case, that the prices obtained at the resale thereof were competent as evidence on the issue of damages.

Appeal by defendant from *Webb, J.,* at February Term, 1915, of Forsyth.

Civil action to recover damages for negligent failure to deliver a telegraphic message.

There was evidence on part of plaintiff tending to show that plaintiff firm were retail grocers doing a general business of that kind in the city of Winston, N. C., and Phillips & Co. were wholesale produce dealers, doing business in Norfolk, Va.; that plaintiffs at this time were handling in their trade on an average of two to three car-loads of cabbage every week, in May about 300 crates, much of it ordered from Phillips & Co., all of it being ordered by telegraph through defendant company; that on Monday, 1 June, 1914, plaintiff filed with defendant for immediate transmission a message to said Phillips & Co., in terms as follows:

Ship today 150 crates of fancy cabbage; same price or less.

　　　　　　　　　　　　　　　　Gardner & Clark.

Plaintiff had ordered a car-load of this cabbage from these same dealers on 29 May, and had paid therefor $1 per crate; that at the hour the message was sent, and should have been received, cabbage had declined to 90 cents per crate; that a car-load of cabbage shipped out of Norfolk on Monday was due to arrive in Winston on Wednesday; that, in expectation of receiving the cabbage on Wednesday, plaintiffs took orders from their trade and had sold out the entire 150 crates to their customers at $2 per crate; that defendant company failed to deliver the message and, by reason of such failure, the sales booked by plaintiffs were not carried out, to plaintiff's damage as indicated.

There was proof offered, also, that Phillips & Co. were in a position to immediately fill the order, and would have done so in time for Wednesday deliveries if the message had been properly transmitted and delivered.

The court held that in no aspect of the evidence were plaintiffs entitled to recover the loss of profits on this order, and that on the issue as to damages plaintiffs were confined to the price of the message and the cost of placing the orders for selling same.

On issues submitted there was verdict of negligent failure to deliver the message and, under the charge of the court, assessing the damages at

$13.25, this being the price of the message and the estimated cost of employees in placing the orders.

Judgment on the verdict, and defendant excepted and appealed, assigning for error the ruling of the court as noted.

*Gilbert T. Stephenson for plaintiff.*
*Raymond G. Parker and J. C. Buxton for defendant.*

HOKE, J., after stating the facts: A telegraph company sued for breach of contract for failure to properly transmit and deliver a commercial message may be held liable as in other cases, on breach established, for such damages as were in reasonable contemplation of the parties and which are capable of ascertainment with a reasonable degree of certainty. *Williamson v. Tel. Co.,* 151 N. C., 223; *Furniture Co. v. Express Co.,* 148 N. C., 87; *Tel. Co. v. Hall,* 124 U. S., 444; Thompson on Electricity, sec. 310. And the significance of the expression, "Within the reasonable contemplation of the parties," may be determined not only from the language of the message itself, but from the facts known to the company at the time or then communicated to it of a kind and character and under circumstances from which it could be reasonably and fairly inferred that the parties contemplated that they should be considered as affecting the question of damages. *Tillinghast v. Cotton Mills,* 143 N. C., 268. The principle may be extended to the recovery of damages incident to the loss of bargains to sell or purchase property and the profits to arise therefrom, not only those growing out of the principal contract, but from collateral agreements connected therewith, when these come within the rule first stated, *i. e.,* when they were in reasonable contemplation of the parties and capable of being ascertained with reasonable certainty from the facts properly in evidence. *Alexander v. Tel. Co.,* 66 Miss., 161; *Pearsall v. Tel. Co.,* 124 N. Y., 256; *Tel. Co. v. Wenger,* 55 Pa. St., 751; Scott and Jarnagin Law of Telegraph, secs. 391-392. In this last citation the author quotes with approval from the well considered case of *Griffin v. Colver,* 16 N. Y., 489, as follows: "The broad general rule in such cases is that the party injured is entitled to recover all the damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions: "the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed." And in speaking of this statement as to certainty, it was said, in *Hardware Co. v. Buggy Co.,* 167 N. C., pp. 423-425: "And as shown by further reference to the authorities, this 'certainty' referred to by the learned judge does not mean mathematical accuracy, but a reasonable

certainty," citing Sutherland on Damages and Hall on Damages, pp. 70-71.

On the question of recovery of profits, as an incident of damages in these and like instances, the cases further hold that when goods are bought for resale in a certain market, and this fact is known to the vendee at the time of contract entered into, the profits may be ascertained by reference to prices prevailing in such market. *Lewis v. Rountree,* 79 N. C., 122. This damage is usually to be ascertained by the difference between the contract and general market price in the designated locality; but when they are bought to be sold again by specified methods and in the regular course of dealing by the purchaser, and these conditions are known to the vendor, it seems that the profits ascertained by resale made in the manner contemplated afford more accurate data for the estimating of the damages actually attributable to the breach, and this, we think, could and should safely be allowed in the absence of any facts or evidence tending to show that a resale was had at extravagant prices or under unusual conditions. The position is approved and well illustrated in two cases recently decided in this Court of *Hardware Co. v. Buggy Co.,* 167 N. C., 423; *Steel and Wire Co. v. Copland,* 159 N. C., 556. In the latter case it was established that defendant had wrongfully failed to deliver a car-load of wire fencing for plaintiff's trade during a specified period, and plaintiff was allowed to recover the profits to be realized on resale at plaintiff's place of business on proof that this car-load could have been sold out at the profit claimed."

In *Hardware Co. v. Buggy Co.,* on wrongful failure to deliver a car-load of buggies sold to plaintiffs, ordered for their trade in spring of 1913, numbering 30 buggies, on proof that the entire car-load could have been readily disposed of at a profit of $15 per vehicle, the evidence was held relevant on the issue as to damages. Speaking to the principle, the Court said: "It is sometimes said that loss of profits to arise from a good bargain may not be considered in estimating the damages from breach of an executory contract; but, on examination, the position will be found to obtain only where, in a given instance, from the uncertainties of trade, the fluctuations of prices, or the like, these anticipated profits present too many elements of uncertainty to be made the basis of a satisfactory business adjustment. This, however, is not because they are profits, but by reason of their uncertainty; and where it appears that such profits were in reasonable contemplation of the parties, and the contract and evidence relevant to the inquiry afford data from which the amount may be ascertained with a reasonable degree of certainty, the profits to arise from a good bargain may be recovered." The opinion further quotes with approval from Hale on Damages as follows: "A difficulty arises, however, when compensation is claimed for prospective losses in

the nature of gains prevented; but absolute certainty is not required. Compensation may be recovered when they are such as in the nature of things are reasonably certain to ensue. Reasonable means reasonable probably. When the losses claimed are contingent, speculative, or merely possible, they cannot be allowed." Hale on Damages, pp. 70-71.

In the present case there are facts in evidence tending to show that plaintiff, retail grocer, doing business in the city of Winston, on Monday, 1 June, ordered from Phillips & Co., general produce dealers in Norfolk, Va., 150 crates of fancy cabbages, a definite order importing a completed contract on shipment of the goods, without more (*Crook v. Cowan*, 64 N. C., 743); that the message was given to the company in time to be transmitted and to procure the shipment of cabbage on Monday afternoon to arrive in Winston, N. C., for plaintiff's trade on Wednesday; that Phillips & Co. had the cabbage and would have shipped same if the message had been received, and on account of the company's negligent failure the shipment was not made; that plaintiff, relying on the timely arrival of the produce ordered, booked the entire order at a stated profit for Wednesday's deliveries, and lost the sales and incidental profits by reason of the nonarrival of the goods; that plaintiff did business with Phillips & Co. through the spring and summer of that year, handling two to three car-loads of cabbage per week, much of it ordered from Phillips & Co. and all orders sent by telegrams through defendant company.

On this evidence, we think that the question of compensatory damages, including the loss of profits, should be submitted to the jury, and, if the facts as claimed by plaintiffs are accepted by them, plaintiffs are entitled to recover for the loss of profits as evidenced by the resales made by them according to their usual methods of dealing. Assuredly so unless there was evidence offered tending to show that, owing to exceptional circumstances, the prices obtained on resale were out of the expected and ordinary, in which case the difference between the cost and charges paid for cabbage and the value in the retail market in Winston would more properly be the rule.

The cases to which we were referred by counsel for appellee, notably, *Newsome v. Tel. Co.*, 144 N. C., 178; *Tanning Co. v. Tel. Co.*, 143 N. C., 376; *Williams v. Tel. Co.*, 136 N. C., 82, and *Walser v. Tel. Co.*, 114 N. C., 440, were cases where there was nothing in the message itself or in the facts known or communicated which gave any fair or reasonable intimation that the damages claimed were to be expected or where the evidence did not tend to establish the loss of a definite contract, but only disclosed the preliminary negotiations or trade inquiries from which a contract might or might not arise.

There was error in the rule for awarding the damages adopted by his Honor, and plaintiff is entitled to a new trial of the cause.

New trial.