"1. Is the defendant, Tempe Harris, indebted to the plaintiff on account of rents, as alleged in the complaint? And if so, in what amount? Answer: `Yes; $776.84, with interest on $478.50 from September 1, 1917, and interest on $298.34 from October 1, 1917.'
"2. Did the plaintiff neglect and fail to comply with the terms of the lease mentioned in the complaint, as alleged in the answer, and if so, was the defendant damaged thereby? Answer: `No.'
"3. If so, what damage did the defendant, Tempe Harris, sustain by reason of such failure? Answer: `Nothing.'"
There is no controversy in regard to the finding of the jury upon the first issue. The court directed the jury to answer the second "No," and the third issue "Nothing." The defendant excepted, and from the judgment rendered appealed.
The plaintiff seeks to recover for rents for the Mountain Meadows Inn, a summer resort hotel near Asheville, for the season of 1917. These rents were calculated upon the amount of the gross receipts under the terms of the written contract of lease and are not in dispute. The defendant set up a counterclaim for $5,000 for breach of the contract of lease, claiming that she had been damaged by reason of the loss of profits and loss of business and extra expense caused during the season of 1917, on account of the failure of the plaintiff to comply with the contract of lease and supply the hotel property during the summer of 1917 sufficient water for the use of the guests in the hotel. That the water supply, by reason of the neglect of the plaintiff, failed, and the guests left the hotel in consequence, the business was broken up, and the defendant sustained loss amounting to several thousand dollars.
At the conclusion of all the evidence, the Court, being of opinion that the defendant was not entitled to recover (626) substantial damages, directed the jury to answer the second *Page 672 
and third issues as above set out. The only point before us is the correctness of such ruling. The learned judge evidently was of opinion that the damages sustained by the defendant could not be ascertained with sufficient accuracy to warrant the submission of the issue to the jury. The plaintiff claims the property under her father, who leased it to the defendant. In the written lease, the lessor contracted to make all necessary outside repairs. The defendant testified that she had leased the premises for five years in 1911, and had renewed the lease in 1916 for five years more; that the hotel was kept open from 15 April to 1 November, and consisted of one main building, two cottages, a garden, etc.; that the main building contained nineteen bedrooms, had seventeen baths, and that there were in all twenty-one toilets, forty-one bedrooms, including main building and cottages, and eight private baths; that she had complied with the terms of the lease; that when she rented the hotel in 1916 it was supplied with water and contained a sewerage system; that the water for the bathrooms and other purposes was received from mountain springs and piped into a reservoir, and that there was a large roof on top of the reservoir, built for the purpose of catching rain water and draining into the reservoir, because the springs were not ample to supply the property with water; the roof over the reservoir was there when the lease was made; that the water supply was the same in 1911, 1912, 1913, and 1916; that in the fall of 1916 a windstorm blew the shed or roof off the reservoir; that this roof had been built flat, inclined towards the center from all sides, with an opening in the center, and all the rain water that fell on the roof fell into the reservoir; that it blew off in October, 1916; that witness notified plaintiff's husband, who was her agent; that he came to Asheville in November; before coming he wrote for defendant, if it wasn't necessary to have it attended to at once, to wait until he came to Asheville; that when he came to Asheville defendant told him the roof was necessary because she didn't have enough water from the springs or the springs would not supply the hotel; Mr. Carey then said he wasn't going to have the roof replaced; defendant told him it was necessary, and that if he didn't have it put back that they would have trouble; the roof was not put back so as to catch the water for the season of 1917; it was put back only so as to catch a portion of the water, and it did not drain into the reservoir; that prior to this time the reservoir and springs had furnished a reasonably good supply of water for the hotel; that the water gave out on 5 August, 1917, and there wasn't any water to supply the bathrooms and toilets; all the bathrooms had to be cut off; toilets had to be flushed with water carried to them from springs on the mountainside; water had to be *Page 673 
carried to all the rooms of the guests; that after the water gave out Mr. Carey had a small pump put in, but that did (627) not remedy the difficulty; that she used the water as carefully as possible; that there was an additional small reservoir intended to be used at Hillside Cottage, one of the cottages under the lease; that the water from the small reservoir gave out on 8 August; that at the time the water gave out every room in the place was engaged; there were between 65 and 70 people in the house, with only two vacant rooms, and people were coming in all the time; that it took 14 to 20 servants, and defendant had that number; that when the water gave out the condition was very objectionable; it was unsanitary; the baths and toilets were cut off entirely; no one in the house had a bath; the water for cooking was carried from the springs; that she didn't have enough water to cook with or wash dishes; at that time the guests were paying $15 a week with one in a room, and from $25 to $50 a week for two in a room; when the water gave out the guests were dissatisfied; many left; that they complained for lack of water; said they couldn't put up with the inconvenience of not having baths, and were afraid of serious sickness on account of sanitary conditions; that they stood the conditions as long as they could put up with them; that Mr. Carey came to the hotel on 8 August and promised water; he saw the number of people that were in the house; saw the house was full of people, and promised water; the water supply was improved very little; that some of the guests had engaged rooms for the entire season; that she had at one time between seventy and seventy-five people in the house, and they were reduced on account of the lack of water to ten or twelve people; the condition as to the water continued through the season until the guests had all gone. Witness then gave the names of a large number of guests who left on account of the lack of water.
Witness further testified that the place would have accommodated eighty to eighty-five people, and that August was the best month of the year at Mountain Meadows Inn. That the actual receipts for 17 August were $2,990.69; for September, $1,864.64; for October, $502.71; that according to her estimate the income for the property during August, 1917, but for the scarcity of water would have been $5,538.15, and for September the income would have between $3,000 and $4,000, and for October between $1,000 and $2,000; that her loss during the summer of 1917 on account of the scarcity of water was between $5,000 and $6,000; that hotel rates had increased 50 per cent over what they were in 1914.
Witness further testified that she paid seventy-odd dollars for extra help for carrying water, and that she suffered some losses on *Page 674 
account of the condition of the roads and want of a telephones line to the hotel; that the roof over the reservoir was 52 by 78 (628) feet prior to October, 1916, and that she did not know until the summer of 1917 that the roof had not been put back as it was before; that she knew there would not be enough water without the use of rain water, but she did not know that Carey had not arranged to catch all the rain water; that Mr. Carey had the work done in February, and was to make the outside repairs.
Witness further testified that in her opinion the value of the lease for the year 1917, if water had been furnished, would have been at least six thousand dollars, and that as it was she made no money at all, but actually lost money.
There was evidence tending to prove the rainfall during the season of 1917, and that if the shed, 52 feet by 78 feet, had been constructed as it formerly was so as to let the water falling on it into the reservoir, an ample supply of water for the season would have been furnished. There was also evidence that Carey instructed Reed to fix the roof over the reservoir in the cheapest way possible, and to so construct it that the water would pour off on the outside and not go into the reservoir. This was in February, 1917. There was evidence corroborating the defendant that she told Carey in November, 1916, that the rain water was necessary. There was evidence that the reservoir was full when the hotel opened for the season of 1917, and that the water gave out entirely by 5 August. There was evidence that there was an abundance of rain during the season of 1917; there was also much other testimony to the effect that a large number of guests left the hotel in August, 1917, for lack of water, and many other persons refused to take rooms at the hotel because they had no water for baths and toilets.
We differ with his Honor in the conclusion that substantial damages may not be recovered by the defendant if the evidence is to be believed. The rule is, in the admeasurement of damages in a case of this kind, that the party injured may recover all the damages, including gains prevented as well as losses sustained, as were fairly within the contemplation of the parties and capable of being ascertained with a reasonable degree of certainty. Nance v. Te. Co., 177 N.C. 313; Gardner v. Tel. Co.,171 N.C. 405; Hardware Co. v. Buggy Co., 167 N.C. 423; Wilkerson v. Dunbar,149 N.C. 20.
In the Nance case, Mr. Justice Walker says: "In an action for damages the plaintiff must prove as part of his case both the amount and cause of his loss. Absolute certainty, however, is not required, but both the cause and the amount of the loss must be shown with reasonable certainty. Substantial damages may be recovered though *Page 675 
plaintiff can only give his loss approximately." Hale on Damages, sec. 70; Sutherland on Damages, sec. 70.
The Nance case is very much in line with the present case. In Sutherland on Damages, 4th Ed., secs. 867 to 870, (629) will be found a full discussion of the subject now under consideration.
In section 868, a case from New York is discussed, wherein the plaintiff was the lessee of a hotel and showed actual receipts of the property for previous years, and daily receipts for some months, and that there was a breach of contract. The following language is quoted with approval: "When it is borne in mind that the plaintiff kept a refectory and boarding-house for the resort of daily visitors for their various meals, and of transit persons for their lodging, it is difficult to suggest any other mode of ascertaining the effect upon the plaintiff's business. To say that he must prove what persons were prevented from visiting his house and what meals they would have taken and paid for is to suggest a mode of proof obviously impracticable, and if it was done it would still leave the same inquiry, `What would have been the profit of the meals they took and paid for?'"
Plaintiff was allowed to recover upon a similar contract in the case ofUnion Pacific R. R. Co. v. Travelers' Insurance Co., 83 F. 676.
In Wilkinson v. Dunbar, supra, it is said by Mr. Justice Hoke: "When prospective damages are allowed to the injured party as arising under a breach of contract, they must be such as are in reasonable contemplation of the parties and capable of being ascertained with a reasonable degree of certainty; and while profits prevented are frequently held to be excluded, they are those expected by reason of collateral engagements, or dependent to a great extent on the uncertainty of a trade and fluctuations of the market."
It follows from all these authorities that the profits lost by the lessee of a hotel, whether those which were the immediate fruits of the business or those which were remote, if the contract was made with reference to them, are recoverable if they can be ascertained with reasonable certainty. That the profits to be made out of a lease of a hotel in conducting the business thereof are within the contemplation of the parties to the lease is a proposition too plain for discussion. An injury to the hotel business consists mainly of a loss of profits, and, therefore, it has been held that where a lessee conducts the business himself, it is competent for him to testify, as the defendant did in this case, to the value of the business based upon the capacity of the hotel, the average number of guests, the rates charged, and the average daily profits. Allisonv. Chandler, 11 Mich. 542 *Page 676 
. The law does not require impossibilities, and therefore does not require a higher degree of certainty than the nature of the case admits.
As said by Mr. Sutherland, sec. 870: "Juries are allowed to act upon probable and inferential as well as direct and positive proofs, and when from the nature of the case the amount of damages (630) cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case having any tendency to show damages or their probable amount so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit."
As Mr. Sutherland again says, sec. 70: "If a regular and established business is wrongfully interrupted, the damages thereto can be shown by proving the usual profits for a reasonable time anterior to the wrong complained of. . . . There is no good reason for requiring any higher degree of certainty in respect to the amount of damages than in respect to any other branch of a cause."
If the evidence of the defendant is to be believed, there was a breach of the contract of lease upon the part of the plaintiff, and according to her testimony the jury would have been warranted in answering the second issue "Yes." The testimony of the defendant also furnished reasonable data from which the jury could have approximated the damages she sustained by reason of such breach during the season of 1917, with reasonable certainty.
New trial.
Cited: Trointino v. Goodman, 225 N.C. 413; Perkins v. Langdon,237 N.C. 170.